SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: sean_kennedy@fd.org)
CHARLES C. BROWN (No. 179365 )
Deputy Federal Public Defender
(E-mail: Charles_Brown@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4206
Telephone (213) 894-4795
Facsimile (213) 894-0081

Attorneys for Defendant
RONALD RAKOW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>RONALD RAKOW,<br>Defendant. | NO. CR 04-1563-MMM<br>DEFENDANT'S POSITION RE: SENTENCING FACTORS<br><br>DATE: April 9, 2007<br>TIME: 1:15 p.m. |

SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: sean_kennedy@fd.org)
CHARLES C. BROWN (No. 179365 )
Deputy Federal Public Defender
(E-mail: Charles_Brown@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4206
Telephone (213) 894-4795
Facsimile (213) 894-0081

Attorneys for Defendant
RONALD RAKOW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>RONALD RAKOW,<br>Defendant. | NO. CR 04-1563-MMM<br>DEFENDANT'S POSITION RE: SENTENCING FACTORS<br><br>DATE: April 9, 2007<br>TIME: 1:15 p.m. |

Defendant, RONALD RAKOW, by and through his attorney of record, Deputy Federal Public Defender Charles C. Brown, hereby files the following position regarding sentencing factors.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: March 26, 2007

By___/s/____________________

CHARLES C. BROWN
Deputy Federal Public Defender

# I.
# INTRODUCTION

*"In our civilization there are fearful hours; such as those when the criminal law pronounces shipwreck upon a man. What a mournful moment is that in which society withdraws itself and gives up a thinking being for ever."*

Victor Hugo,
*Les Miserables*

As the former manager of the legendary rock and roll group the Grateful Dead and president and founder of their record company, Ron Rakow often delights his friends with stories of his adventures with the likes of Jerry Garcia, Hendrix, Joplin, Clapton, and the Beatles. His amazing stories are always told with wisdom, humor and fatherly concern. He is a person who is always willing to share his unique insights and reflections acquired from a lifetime of experiences. As a result, he has made friends from all walks of life and those who know him love him. As the attached interviews demonstrate, beneath Mr. Rakow's colorful and sometimes brash exterior, he is a sensitive person who cares deeply for the well-being of his family, friends and community. Exhibit A, Sentencing Video.

For the reasons set forth below, the recommended five year sentence is greater than necessary to further the interests of justice. The defense respectfully requests that this Court impose a sentence that will allow Mr. Rakow to remain in the community without the interruption of a period of incarceration.

/

/

/

/

/

## II.

## DISCUSSION

### A.

### Sentencing Considerations Post *Booker*

The Supreme Court has ruled that the mandatory nature of the Federal Sentencing Guidelines runs afoul of the Sixth Amendment. *United States v. Booker*, 543 U.S. 220 (2005). Section 3553(a) is referred to in *Booker* and much post-*Booker* case law as containing various "factors" – one of which is the guidelines – that must now be considered in determining a sentence. This is a potentially misleading oversimplification. Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a) and the "factors" to be considered in fulfilling that mandate. Because the sentencing mandate contains a limiting principle favorable to defendants, it must be made clear that *the sentencing mandate is an overriding principle that limits the sentence a court may impose*.

#### 1. The Section 3553(a) Sentencing Mandate: the "Parsimony Provision"

The overriding principle and basic mandate of Section 3553(a) requires district courts to impose a sentence "*sufficient, but not greater than necessary*," to comply with the four purposes of sentencing set forth in Section 3553(a)(2):

(a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");

(b) deterrence;

(c) incapacitation ("to protect the public from further crimes"); and

(d) rehabilitation ("to provide the defendant with needed educational or

vocational training, medical care, or other correctional treatment in the most effective manner").

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The Parsimony Provision is not just another "factor" to be considered along with the others set forth in Section 3553(a) (discussed below) – it sets an independent limit on the sentence a court may impose. *See United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part) (since § 3553(a) requires sentence to be no greater than necessary to meet 4 purposes of sentencing, imposition of sentence greater than necessary to meet those purposes is reversible, even if within guideline range).

**2. The Section 3553(a) Factors to be Considered in Complying With the Sentencing Mandate**

In determining the sentence minimally sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the court must consider several factors listed in Section 3553(a). These factors are:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the kinds of sentence available;"

(3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

(4) the need to avoid unwarranted sentencing disparity; and

(5) the need to provide restitution where applicable.

18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7).

Despite the government's assertion to the contrary, neither the statute itself nor *Booker* suggests that any one of these factors is to be given greater weight than any other factor. *However, it is important to remember that all factors are subservient to*

*Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.*

**3. The Weight Given to the Guidelines**

As Judge Wardlaw noted in her opinion in United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005) (en banc): "Booker's profound impact on federal sentencing" is that it "restor[es] the discretion to the sentencing court that the mandatory guidelines had stripped away." Ameline, 409 F.3d at 1099 (Wardlaw, J., concurring in part and dissenting in part). And "[t]here is no presumption that [the advisory guideline range] has taken into account all of the relevant circumstances that the statute states that the court 'shall consider.'" United States v. Diaz-Argueta, 447 F.3d 1167, 1171 (9th Cir. 2006). "Indeed, district courts may even consider factors that were precluded from consideration altogether prior to Booker," and "have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant.'" Ameline, 409 F.3d at 1093 (Wardlaw, J., concurring and dissenting).

**B.**

**Relevant Factors in the Instant Case**

1. Nature and Circumstances of the Offense

Mr. Rakow was found guilty of tax evasion after a jury trial. Mr. Rakow initially disputed the IRS's disallowance of certain business expense deductions for the tax years 1985 through 1992, but he ultimately entered into a stipulated tax court judgment with the assistance of his accountant David Hellman. *See* David Hellman's Trial Testimony. RT (7/6/06) 407- 446; Exhibit B, Tax Court Decisions of 1996 and 1997(Introduced at trial as Govt's Exhibits 1 and 3). The total principle amount of

taxes due and owing without interest and penalties for the tax years in question was a $504,023.00. Exhibit B. With interest and penalties, this amount grew exponentially to the amount of $2,803,623.70. PSR ¶ 11.

At trial, the government argued that Mr. Rakow earned several millions of dollars in income from 1998 through 2001 and that he devised a scheme to avoid payment of his pre-existing debt by transferring income and assets to Ms. Del Bianco. According to the government's theory, Ms. Del Bianco then falsely reported the income as hers and Mr. Rakow falsely under reported his income. Ms. Del Bianco was ultimately acquitted of all charges against her and Mr. Rakow was found not guilty of filing false tax returns as well.

Although the jury apparently rejected Mr. Rakow's contention that he acted in good faith with respect to the evasion charge, the defense introduced evidence at trial that was mitigating and warrants further consideration by the court at the time of sentencing. First, there was reliable evidence presented that established that Mr. Rakow took some steps towards working out an offer in compromise with the IRS which would have significantly reduced his tax obligation. Second, there was evidence introduced that showed that Mr. Rakow took steps towards filing bankruptcy which would have completely discharged his tax debt. Mr. Rakow's failure to pursue these opportunities to legally discharge his debt may not have risen to the level of a "legal excuse or justification" in the mind of the jury, but it certainly presents a more complex and nuanced picture of his state of mind at the time of the offense and mitigates against the lengthy sentence recommended by the government.

Further, Mr. Rakow and Ms. Del Bianco with the assistance of their attorney Mr. Ken Barrish, had negotiated a settlement with the civil division of the IRS, prior to the criminal charges being filed in this case, which would have completely discharged Mr. Rakow's tax obligation to the IRS. Again, although the agreement was ultimately nullified by the criminal investigator in this case so that criminal charges could be brought, the proposed financial settlement is a mitigating factor in

this case that warrants against the imposition of a custodial term in this case. Given Mr. Rakow's bona fide yet "imperfect" efforts at a civil settlement, the recommended five year custodial term appears unduly punitive, harsh and greater than necessary to further the interests of justice in this case.

2. History and Characteristics of Defendant

Mr. Rakow's personal history and characteristics are mitigating factors that warrant a sentence substantially below the recommended 60-month term. Mr. Rakow is almost seventy years old. As has been documented for the court, he has lived a unique life. Growing up in New York, the son of a garment manufacturer and living in the heart of San Francisco at the height of the cultural revolution, Mr. Rakow has had adventures and experiences that seem to step out of the pages of history.

He is a complex man who enjoys nothing more than being surrounded by the people and things he loves most in this world; his fiancé, his children, his friends, his nine chihuahuas and his perhaps his first love, photography. For Mr. Rakow, "the hidden aspects of life" are revealed through the lens of his camera. He sees "the healing power" of art and photography as a means to harmonize and actualize the diverse aspects of his immediate and larger community.

These proceedings have taken an extreme toll on Mr. Rakow and his family. The stress of the tax liens, the trial and the uncertainty of the outcome have impacted Mr. Rakow and his family's health and well-being. As noted above, Mr. Rakow feels responsible for causing this stress and disrupting his household. That being said, Mr. Rakow is not a danger to the community and the recommended statutory maximum punishment is unwarranted. Mr. Rakow should be required to make financial amends for the tax loss, but he also should be allowed to remain in the community.

_____

/

/

3. Just Punishment, Deterrence and Public Protection

There can be no doubt that there is a strong societal interest in enforcing the tax laws of this country and although he still contends that he acted in good faith, Mr. Rakow is extremely remorseful for the impact his actions and inactions have had on his family. However, in this case the recommended statutory maximum punishment does not appear justified under the circumstances. Mr. Rakow is not a danger to the community, so the recommended five year term is not necessary to protect the public. Nor is such a lengthy prison term necessary to deter Mr. Rakow in the future. The Court can be reasonably assured that after this lengthy ordeal, Mr. Rakow will do his best to ensure that his taxes are paid in a timely manner. Even from a purely retributive perspective, the recommended term seems unduly harsh. Before the court is an individual who was making bona fide efforts to resolve his tax problems with the IRS and was close to a settlement before criminal charges were filed against him. Perhaps in the eyes of the government it was too little too late; but nonetheless, the recommended term seems unwarranted under the circumstances. Mr. Rakow, simply requests that the court temper its punishment in this case with wisdom, understanding and the enumerated statutory factors listed above.

4. Rehabilitation

In addition to promoting respect for the law and to provide just punishment for the offense, the statutory scheme contemplates rehabilitation as an important factor in the sentencing calculus. In light of the circumstances surrounding the offense, the lengthy recommended sentence would not appear to further this goal. To the contrary, the recommended term appears purely retributive in nature with no regard for Mr. Rakow's well-being. This case calls out for the type of parsimony and alternative sentencing contemplated by § 3553.

/

/

5. Sentencing Guideline Considerations

Both the government and probation's statutory maximum 60-month recommendation is based on the misapplication of the November 1, 2005 sentencing guidelines. As a result, Mr. Rakow's advisory range is incorrectly computed as follows:

| | |
|---|---|
| Base Offense Level [§ 2T4.1 ] | 24 |
| Sophisticated Means [§ 2T1.1 (b)(2)] | +2 |
| Obstruction Of Justice (Govt.) [§3C1.1] | 2 |
| Total Offense Level | 26/28 |
| Criminal History | I |
| **Recommended Guideline Range** (Prob.) | 63-78 |
| **Recommended Guideline Range** (Govt.) | 78-97 |

As set forth below, the 2005 edition of the Guidelines should not be used to compute Mr. Rakow's advisory range. Second, the inclusion of interest and penalties in the loss computation is improper. Third, the proposed enhancement for "sophisticated means" is not warranted. Finally, the government's request for an obstruction of justice enhancement is not justified.

*a. Guideline Edition and Ex Post Facto Concerns*

A defendant must be sentenced under the version of the sentencing guidelines which is in effect on the date when the defendant is sentenced, but if the use of the Guidelines on the date of sentencing is found to violate the Ex Post Facto Clause then the sentencing court must apply those guidelines which were in effect on the date the offense was committed. *United States v. Paskow*, 11 F.3d 873, 877 (9th Cir. 1993). The Ex Post Facto Clause prohibits the retroactive application of laws when such application disadvantages defendants. *Hamilon v. United States,* 67 F.3d 761, 764 (9th Cir. 1995). An ex post facto problem applies to the sentencing guidelines when

"application of a version of the guidelines enacted after the offense leads to higher punishment than would application of the Guidelines in effect at the time of the offense." *United States v. Orland,* 109 F.3d 539, 546 (9th Cir. 1997).

**The Loss Table at § 2T4.1**

On November 1, 2001, the tax loss table at § 2T4.1 was substantially revised by the sentencing commission. *See* USSG, Appendix C, Nov. 1, 2001, Amendment 617. These revisions provided for "substantial increases in penalties for moderate and higher loss amounts . . ." *Id.* at 179. Thus, prior to November 1, 2001, a tax loss of $500,000 (greater than $350, 000 but less than $550,000) resulted in a base offense level of 17. *See* USSG § 2T4.1(L) (Nov. 2000). After 2001, the loss table at § 2T4.1 was radically altered, resulting in greater penalties for the same loss amounts. Thus, after 2001, a loss amount of $500,000 (between $400,000 and $1 million) now results in a base offense level of 20. USSG § 2T4.1(H) (Nov. 2001).

Here, both the government and the probation office rely on the November 1, 2005 Guideline Edition in computing Mr. Rakow's sentence. This raises serious ex post facto concerns for several reasons. First, because Ms. Del Bianco paid taxes on all income assigned to her during the relevant time period, the only tax loss necessarily at issue in this case is Mr. Rakow's pre-existing unpaid tax debt, which dates back to the period between 1985 and 1992. Such debt clearly pre-dates the 2001 amendments to the loss table.

Further, although the jury did not make a specific finding as to which act of evasion it found in support of its verdict, the overwhelming majority of the acts of evasion attributed to Mr. Rakow occur between 1998 and 2000 - well before the 2001 guideline amendments. Even Mr. Rakow's interview with there IRS where, according to the government, he falsely completed the 433-A and B forms occurred in 1999. PSR ¶ 13. Thus, it would be improper and unfair to use the later guidelines in computing Mr. Rakow's advisory guideline range.

**Interest and Penalties**

Prior to 2001, the Guidelines specifically omitted interest and penalties from the "tax loss" computation. USSG § 2T1.1, comment. (n.1) (Nov. 2000) ("The tax loss does not include interest or penalties"). After 2001, the Guidelines provided for the inclusion of interest and penalties in the tax loss computation for "willful evasion of payment cases under 26 U.S.C. § 7201 . . ." USSG § 2T1.1, comment. (n.1) (Nov. 2001).

As established at trial, the principle amount owing after the 1997 tax court settlement was $504,023.00. Only after the inclusion of interest and penalties does the government and the probation office arrive at the $2.8 million dollar figure. PSR ¶33. Because of ex post facto concerns, the court should not use interest and penalties in computing Mr. Rakow's loss computation. The debt and the acts attributed to Mr. Rakow occur well before the 2001 amendments that make it proper to include interest and penalties in the loss computation.

Moreover, the principle amount on the tax is only fair measure of actual "harm" to the government as this was the money that was owed and not paid. It would simply be unfair to include 15 years worth of interest and penalties, which were accruing at usurious rates in this case, as the basis for arriving at the appropriate sentence in this case - especially given Mr. Rakow's efforts at civil settlements that would have completely discharged the debt.

*b. Sophisticated Means*

The Guidelines define sophisticated means as "especially complex or especially intricate" conduct in an effort to conceal the offense such as "hiding assets or transactions" through the use of "fictitious entities, corporate shells, or offshore financial accounts." USSG 2T1.1 n.4. Here, the recommended two-level enhancement for "sophisticated means" is not simply not warranted. There was nothing sophisticated, intricate or complex in this case about the direct and open transfer of income and assets to Ms. Del Bianco, for which millions of dollars in

taxes were paid as a result. In fact, as Carl Knudson testified at trial, there was no evidence of shell corporations or secret off-shore accounts or double books that would make Mr. Rakow's arrangements with Ms. Del Bianco sophisticated or complex. RT (7/13/06) 1163. To the contrary, these were direct A to B transactions that were well documented and transparent - thus, by definition, they were not "sophisticated."

*c. Obstruction of Justice*

The government's request for an obstruction of justice enhancement in this case is simply without merit. The government is seeking to make the proverbial "mountain out of a molehill" with respect to defense counsel's withdrawn offer of proof regarding the prenuptial agreement in this case. Defense counsel withdrew its proffer in a timely fashion and informed both government counsel and the court that it would not be relying on the item of evidence - well before trial in this case. The government would like to opine as to the defense's tactical considerations but there is simply no basis to support its contention that the withdrawn proffer was "false" and warrants an obstruction enhancement. Despite the government's speculation as to the importance of the agreement to the defense case, there were perhaps many tactical reasons for such a withdrawal. For example, rather than getting bogged down in a collateral battle of forensic experts with respect to the admissibility of the document, defense counsel could simply elicit evidence of Mr. Rakow's good faith from other witness such as David Hellman and other documents such as Mr. Rakow's bona fide efforts to work out a civil settlement of the tax debt which was inconsistent with the government's theory of the case. The government's decision to continue to expend inordinate energy and resources well after the issue was withdrawn is simply not an appropriate basis to pursue an obstruction claim. If the court is inclined to apply this enhancement, then the defense would respectfully request an evidentiary hearing with respect to the complex forensic issues raised by the government in its memorandum and the opportunity to present expert testimony in opposition to the government's

claims.

*d. Revised Guideline Computation*

Because of the ex post facto concerns, the November 2000 Guidelines should be used in computing Mr. Rakow's advisory range. Accordingly, Mr. Rakow's advisory range should be as follows:

| | |
|---|---|
| Base Offense Level [§ 2T4.1(L)] Loss More than $325,000 But Less than $550,000 | 17 |
| Sophisticated Means [§ 2T1.1 (b)(2)] | n/a |
| Obstruction Of Justice (Govt.) [§3C1.1] | n/a |
| Total Offense Level | 17 |
| Criminal History | I |
| Advisory Guideline Range | 24-30 |

## III.
## CONCLUSION

In this case, the interests of justice would be served by the imposition of a non-custodial sentence. Therefore, the defense respectfully requests that this Court impose a period of home confinement and community service which would non-allow Mr. Rakow to remain in the community and continue to care for his family.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: March 26, 2007 By____/s/______________________

CHARLES C. BROWN
Deputy Federal Public Defender