GEORGE S. CARDONA
Acting United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division
KENDRA S. McNALLY (CSB # 89658)
JASON P. GONZALEZ (CSB #178768)
Assistant United States Attorneys
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-8957/2253
Facsimile: (213) 894-6269
E-mail: kendra.mcnally@usdoj.gov
jason.gonzalez@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>RONALD RAKOW,<br>Defendant. | No. CR 04-1563-MMM<br>**DECLARATION OF JASON P. GONZALEZ IN SUPPORT OF GOVERNMENT'S RESPONSE TO DEFENDANT'S POSITION REGARDING SENTENCING FACTORS**<br>Date: 4/9/07<br>Time: 1:15 p.m. |

I, JASON P. GONZALEZ, declare as follows:

1. I am an Assistant United States Attorney with the United States Attorney's Office for the Central District of California. I, along with Assistant United States Attorney Kendra S. McNally, am assigned to represent the United States in this case.

2. Attached as Exhibit A are true and correct copies of the trial exhibits cited in the government's response to

defendant Rakow's sentencing memorandum.

3. Attached as Exhibit B are true and correct copies of the trial testimony cited in the government's response to defendant Rakow's sentencing memorandum.

4. Attached as Exhibit C is a true and correct copy of a chart prepared by IRS Revenue Agent David Jew in connection with the trial in this case. It was not submitted at trial, but was the subject, along with other charts David Jew prepared, of extensive litigation in this matter. The provenance of Mr. Jew's charts is discussed in detail in the government's June 30, 2006, Submission Regarding the Testimony of David Jew.

I swear under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on April 2, 2007, in Los Angeles, California.

/s/
JASON P. GONZALEZ

Internal Revenue Service
1301 Clay St. Ste. 1040S
Oakland, Ca. 94612

D tment of the Treasury

Letter Number: 1058(DO)

Letter Date:
February 2, 1999

Social Security or Employer Identification Number
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

Person to Contact:
P.AhYat - 94-06499

Contact Telephone Number:
510-637-3125

CERTIFIED MAIL - RETURN RECEIPT

Ronald L. and Julie K. Rakow
PO Box 3120
San Rafael, CA. 94912

FINAL NOTICE
NOTICE OF INTENT TO LEVY AND NOTICE OF YOUR RIGHT TO A HEARING
*PLEASE RESPOND IMMEDIATELY*

Your Federal tax is still not paid. We previously asked you to pay this, but we still haven't received your payment. This letter is your notice of our intent to levy under Internal Revenue Code (IRC) Section 6331 and your right to receive Appeals consideration under IRC Section 6330.

We may file a Notice of Federal Tax Lien at any time to protect the government's interest. A lien is a public notice to your creditors that the government has a right to your current assets, including any assets you acquire after we file the lien.

If you don't pay the amount you owe, make alternative arrangements to pay, or request Appeals consideration within 30 days from the date of this letter, we may take your property, or rights to property, such as real estate, automobiles, business assets, bank accounts, wages, commissions, and other income. We've enclosed Publication 594 with more information, Publication 1660 explaining your right to appeal, and Form 12153 to request a Collection Due Process Hearing with Appeals.

To prevent collection action, please send your full payment today. Make your check or money order payable to U.S. Treasury. Write your social security number or employer identification number on your payment. Send your payment to us in the enclosed envelope with a copy of this letter. The amount you owe is:

| Form Number | Tax Period | Unpaid Amount from Prior Notices | Additional Penalty & Interest | AMOUNT YOU OWE |
|---|---|---|---|---|
| 1040 | 12-31-1985 | $955,360.99 | $215,381.60 | $1,170,742.59 |
| 1040 | 12-31-1986 | $617,404.15 | $148,678.28 | $766,082.43 |
| 1040 | 12-31-1987 | $413,273.82 | $100,889.84 | $514,166.66 |
| 1040 | 12-31-1989 | $73,277.58 | $21,099.18 | $94,376.76 |
| 1040 | 12-31-1992 | $129,900.67 | $28,539.71 | $158,440.38 |

(over)

Letter 1058 (DO) (Rev. 1-1999)

EXHIBIT A

Exhibit 14
pg 2 of 3

USA994

# United States of America

**Department of the Treasury**
**Internal Revenue Service**

Date: May 31, 2005

CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: is a true copy of an U.S. Individual Income Tax Return (Form 1040), and attachments, for Denise Del Bianco, SSN: 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, for the tax period ending December 31, 2001, consisting of ninety-two pages

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By the direction of the Secretary of the Treasury:

John Rialon
Resident Agent in Charge
CI Delegation Order 18

USA 40416

Exhibit 54 Page 1

Catalog Number 19002E

*U.S. Government Printing Office: 2000 – 533-039/07196

Form 2866 (Rev. 09-97)

EXTENSION GRANTED TO 10[illegible]/02

9922127820107-2

Form **1040** U.S. Individual Income Tax Return **2001** (99) IRS Use Only - Do not write or staple in this space.

313

| | |
|---|---|
| For the year Jan. 1-Dec. 31, 2001, or other tax year beginning , 2001, ending , 20 | OMB No. 1545-0074 |
| **Label** (See instructions on page 19.) Use the IRS label. Otherwise, please print or type. | |
| Your first name and initial: DENISE — Last name: DEL BIANCO | Your social security number: 553 86 1111 |
| If a joint return, spouse's first name and initial — Last name | Spouse's social security number |
| Home address (number and street). If you have a P.O. box, see page 19. P. O. BOX 2429 — Apt. no. | **Important!** You must enter your SSN(s) above. |
| City, town or post office, state, and ZIP code. If you have a foreign address, see page 19. SANTA BARBARA, CA 93120 | |

**Presidential Election Campaign** (See page 19.) **Note.** Checking "Yes" will not change your tax or reduce your refund. Do you, or your spouse if filing a joint return, want $3 to go to this fund? You: [ ] Yes [X] No — Spouse: [ ] Yes [ ] No

## Filing Status

Check only one box.

1. [ ] Single
2. [ ] Married filing joint return (even if only one had income)
3. [ ] Married filing separate return. Enter spouse's social security no. above and full name here.
4. [X] Head of household (with qualifying person). (See page 19.) If the qualifying person is a child but not your dependent, enter this child's name here.
5. [ ] Qualifying widow(er) with dependent child (year spouse died ). (See page 19.)

## Exemptions

6a [X] **Yourself.** If your parent (or someone else) can claim you as a dependent on his or her tax return, **do not** check box 6a

b [ ] **Spouse**

No. of boxes checked on 6a and 6b: 1

c **Dependents:**

| (1) First name Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 20) |
|---|---|---|---|
| JAMES R MULKEY | 607 74 0345 | SON | |
| JEREMY B MULKEY | 619 78 1049 | SON | |
| SANDY B MULKEY | 619 78 2260 | DAUGHTER | X |
| | | | |
| | | | |
| | | | |

If more than six dependents, see page 20.

No. of your children on 6c who: ● lived with you: 3 — ● did not live with you due to divorce or separation (see page 20) — Dependents on 6c not entered above

d Total number of exemptions claimed — Add numbers entered on lines above: 4

## Income

Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a W-2, see page 21.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| Line | Description | | Line | Amount |
|---|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | | 7 | |
| 8a | Taxable interest. Attach Schedule B if required | | 8a | 22,573. |
| b | Tax-exempt interest. Do not include on line 8a | 8b | | |
| 9 | Ordinary dividends. Attach Schedule B if required | | 9 | 4,724. |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | STMT 1 STMT 3 | 10 | 9,982. |
| 11 | Alimony received | | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | | 12 | 186,555. |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here [ ] | | 13 | 894,746. |
| 14 | Other gains or (losses). Attach Form 4797 | | 14 | <6.> |
| 15a | Total IRA distributions 15a | b Taxable amount (see page 23) | 15b | |
| 16a | Total pensions and annuities 16a | b Taxable amount (see page 23) | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | | 17 | 366,245. |
| 18 | Farm income or (loss). Attach Schedule F | | 18 | |
| 19 | Unemployment compensation | | 19 | |
| 20a | Social security benefits 20a | b Taxable amount (see page 25) | 20b | |
| 21 | Other income. List type and amount (see page 27) | | 21 | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your **total income** | | 22 | 1,484,819. |

## Adjusted Gross Income

| Line | Description | Line | Amount | Line | Amount |
|---|---|---|---|---|---|
| 23 | IRA deduction (see page 27) | 23 | | | |
| 24 | Student loan interest deduction (see page 28) | 24 | | | |
| 25 | Archer MSA deduction. Attach Form 8853 | 25 | | | |
| 26 | Moving expenses. Attach Form 3903 | 26 | | | |
| 27 | One-half of self-employment tax. Attach Schedule SE | 27 | 7,483. | | |
| 28 | Self-employed health insurance deduction (see page 30) | 28 | | | |
| 29 | Self-employed SEP, SIMPLE, and qualified plans | 29 | | | |
| 30 | Penalty on early withdrawal of savings | 30 | | | |
| 31a | Alimony paid b Recipient's SSN | 31a | | | |
| 32 | Add lines 23 through 31a | | | 32 | 7,483. |
| 33 | Subtract line 32 from line 22. This is your **adjusted gross income** | | | 33 | 1,477,336. |

USA 40417

RECEIVED 821 OCT 02 2002 INTERNAL REVENUE SERVICE FRESNO, CA

C1 148

Exhibit 54 Page 2

110001 11-27-01

LHA **For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 72.** Form **1040** (2001)

4

11000926 794351 DELBIANCODEN 2001.06000 DEL BIANCO, DENISE DELBIAN1

Form 1040 (2001) DENISE DEL [redacted]NCO [redacted]-86-1111 Page 2

## Tax and Credits

| Line | Description | Box | Amount |
|---|---|---|---|
| 34 | Amount from line 33 (adjusted gross income) | 34 | 1,477,336. |
| 35a | Check if: ☐ You were 65 or older, ☐ Blind; ☐ Spouse was 65 or older, ☐ Blind. Add the number of boxes checked above and enter the total here ▶ | 35a | |
| b | If you are married filing separately and your spouse itemizes deductions, or you were a dual-status alien ▶ | 35b ☐ | |
| 36 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | 36 | 1,070,158. |
| 37 | Subtract line 36 from line 34 | 37 | 407,178. |
| 38 | If line 34 is $99,725 or less, multiply $2,900 by the total number of exemptions claimed on line 6d. If line 34 is over $99,725, see the worksheet on page 32 | 38 | 0. |
| 39 | Taxable income. Subtract line 38 from line 37. If line 38 is more than line 37, enter -0- | 39 | 407,178. |
| 40 | Tax. Check if tax from a ☐ Form(s) 8814 b ☐ Form 4972 | 40 | 77,811. |
| 41 | Alternative minimum tax. Attach Form 6251 | 41 | 37,321. |
| 42 | Add lines 40 and 41 ▶ | 42 | 115,132. |
| 43 | Foreign tax credit. Attach Form 1116 if required | 43 | |
| 44 | Credit for child and dependent care expenses. Attach Form 2441 | 44 | |
| 45 | Credit for the elderly or the disabled. Attach Schedule R | 45 | |
| 46 | Education credits. Attach Form 8863 | 46 | |
| 47 | Rate reduction credit. See the worksheet on page 36 | 47 | |
| 48 | Child tax credit (see page 37) | 48 | |
| 49 | Adoption credit. Attach Form 8839 | 49 | |
| 50 | Other credits from: a ☐ Form 3800 b ☐ Form 8396 c ☐ Form 8801 d ☐ Form (specify) | 50 | |
| 51 | Add lines 43 through 50. These are your total credits | 51 | |
| 52 | Subtract line 51 from line 42. If line 51 is more than line 42, enter -0- ▶ | 52 | 115,132. |

Standard Deduction for -
- People who checked any box on line 35a or 35b or who can be claimed as a dependent, see page 31.
- All others: Single, $4,550; Head of household, $6,650; Married filing jointly or Qualifying widow(er), $7,600; Married filing separately, $3,800

## Other Taxes

| Line | Description | Box | Amount |
|---|---|---|---|
| 53 | Self-employment tax. Attach Schedule SE | 53 | 14,966. |
| 54 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 54 | |
| 55 | Tax on qualified plans, including IRAs, and other tax-favored accounts. Attach 5329 if required | 55 | |
| 56 | Advance earned income credit payments from Form(s) W-2 | 56 | |
| 57 | Household employment taxes. Attach Schedule H | 57 | |
| 58 | Add lines 52 through 57. This is your total tax ▶ | 58 | 130,098. |

## Payments

| Line | Description | Box | Amount |
|---|---|---|---|
| 59 | Federal income tax withheld from Forms W-2 and 1099 | 59 | |
| 60 | 2001 estimated tax payments and amount applied from 2000 return | 60 | |
| 61a | Earned income credit (EIC) | 61a | |
| b | Nontaxable earned income | 61b | |
| 62 | Excess social security and RRTA tax withheld (see page 51) | 62 | |
| 63 | Additional child tax credit. Attach Form 8812 | 63 | |
| 64 | Amount paid with request for extension to file (see page 51) | 64 | 200,000. |
| 65 | Other payments. Check if from a ☐ Form 2439 b ☐ Form 4136 | 65 | |
| 66 | Add lines 59, 60, 61a, and 62 through 65. These are your total payments ▶ | 66 | 200,000. |

If you have a qualifying child, attach Schedule EIC.

## Refund

| Line | Description | Box | Amount |
|---|---|---|---|
| 67 | If line 66 is more than line 58, subtract line 58 from line 66. This is the amount you overpaid | 67 | 64,754. |
| 68a | Amount of line 67 you want refunded to you ▶ | 68a | 0. |
| b | Routing number ▶ c Type: ☐ Checking ☐ Savings ▶ d Account number | | |
| 69 | Amount of line 67 you want applied to your 2002 estimated tax ▶ | 69 | 64,754. |

Direct deposit? See page 51 and fill in 68b, 68c, and 68d.

## Amount You Owe

| Line | Description | Box | Amount |
|---|---|---|---|
| 70 | Amount you owe. Subtract line 66 from line 58. For details on how to pay, see page 52 ▶ | 70 | |
| 71 | Estimated tax penalty. Also include on line 70 | 71 | 5,148. |

## Third Party Designee

Do you want to allow another person to discuss this return with the IRS (see page 53)? [X] Yes. Complete the following. ☐ No

Designee's name ▶ PREPARER Phone no. ▶ Personal identification number (PIN) ▶

## Sign Here

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See page 19. Keep a copy for your records.

Your signature: X Denise Del Bianco | Date: 9-30-02 | Your occupation: BUSINESS SERVICES | Daytime phone number: x 805-683-3430

Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation

## Paid Preparer's Use Only

Preparer's signature ▶ David M. Hellman | Date: 9/26/2002 | Check if self-employed ☐ | Preparer's SSN or PTIN: 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

Firm's name (or yours if self-employed), address, and ZIP code ▶ LAW OFFICE OF DAVID M. HELLMAN, A.P.C. | EIN: 68 0102687
851 IRWIN STREET, SUITE 205 | Phone no. (415) 457-4411
SAN RAFAEL, CA 94901

USA 40418

110002
11-27-01

Exhibit 54 Page 3

5

11000926 794351 DELBIANCODEN 2001.06000 DEL BIANCO, DENISE DELBIAN1

MORGAN STANLEY DEAN WITTER 03-15-99 10:47

OFFICIAL SECURITIES RECEIPT NUMBER 902-44391 CLIENT/AE COPY

RECEIVED FOR DWR ACCOUNT 343-076489-0-025

RECEIVED ON: 03-12-99

DENISE DEL BIANCO
4549 VIA HUERTO
SANTA BARBARA CA 93110-2323

SHIPPED TO: OSC (LA)

RECEIVED 25,000 AMERICAN INTERACTIVE MEDIA INC
COMMON - INC NEVADA

PAPERS ATTACHD: STK PWR
PAPERS TO COME: RSTD APPVL WIRE, SEC WAIVER

| NBR | SHARES | CTF NUMBER | DATED | IN NAME OF *OR* NEXT CPN ATTACHED |
|---|---|---|---|---|
| 01 | 25000 | 5172 | 12-04-95 | ROBERT RAKOW |

RECEIPT 902-44391 FOR ACCT 343-076489-0

Exhibit 69 Page 1

USA385

DEAN WITTER REYNOLDS INC.

**TEMPORARY RECEIPT**

RECEIPT
For securities, this is a memorandum receipt. Official receipt of Dean Witter Reynolds Inc. will be mailed to you. Do not accept this receipt unless completely filled out.

S. B. (CITY) 3/11 (DATE) 19 99

RECEIVED FROM Denice Del Bianco ACCT. # 343-076489

| QUANTITY | DESCRIPTION | CERT. NUMBER | REGISTRATION |
| --- | --- | --- | --- |
| 25,000 | American Interactive Media, Inc. | 5172 | Robert Rakow |
| | | | '99 MAR 11 PM 3:26 |
| | | | |
| | | | |

$ ____ CHECK NUMBER ____ BANK ____ BY K

DWR-8522 (6 81)

Exhibit 70 Page 1

USA144

*Sidney Azeez*
*3122 Fire Road, Suite 200*
*Egg Harbor Township, NJ 08234*
*(609) 348-1400*
*Telecopier: (609) 645-9696*

June 11, 1998

Ron Rakow
4549 Via Huerto
Santa Barbara, CA 93110

Dear Ron:

On June 9, 1998, Earthlink completed the transaction with Sprint, whereby Sprint purchased approximately 16.582% of your shares at $45.00 per share.

To recapitulate your transaction, the original purchase was 2756 shares at $9.07 per share, which were split ten for one (10 for 1) then subsequently reverse-split one for two (1 for 2), which left you with 13,780 shares. On the second purchase, you paid $24.18 per share for your purchase of 2399 shares, also split ten for one (10 for 1), yielding 23,999 shares and subsequently reverse-split one for two (1 for 2), resulting in 11,995 shares. On the last round of private placement financing, you purchased an additional 20,492 shares at $4.88 per share, which were also reverse-split one for two (1 for 2) resulting in 10,247 shares. On February 6, 1997 you agreed to sell 12,00 shares to Michael Stern, which left you a balance of 24,021 shares.. The number of shares that you owned, prior to the Sprint purchase, was 24,021 shares. Since 16.582% of these shares is what Sprint has purchased, you are being compensated for 3983.16 shares at $45.00 for the sum of $179,242.30, which has been journaled to the Prudential Securities account of Denise DelBianco, as we discussed.

The balance of your shares will be forthcoming from the Transfer Agent hopefully within the next thirty (30) days, and will be in the amount of 20,037.84 shares. (The fractional balance of shares due you will be paid in cash prorated at the value of $60.00 per share.) The shares will be in my name but will be subsequently sent to you with a Stock Power to convert into whatever name you wish. No tax has been withheld from the payment you receive; you will be responsible for paying taxes on these proceeds, which will be taxed at 20% since the stock had been held for more than two years.

Thank you for your patience during this entire transaction, but it has been very rewarding.

I wish you well with the remainder of your Earthlink investment.

All the best,

Sam

SAM

Exhibit 111 Page 1

# REED E. SLATKIN

890 NORTH KELLOGG AVENUE • SANTA BARBARA, CALIFORNIA 93111 • (805) 683-3441 • FAX (805) 967-3544

September 14, 1995

Sidney Azeez
Bayport One - Suite 400
W. Atlantic City NJ 08232

Please find below your account activity for the period ending 09/30/95

| | | |
|---|---|---|
| 07/01/95 | Starting Balance: | $1,253,383.15 |
| 09/30/95 | Ending Balance : | $1,387,034.90 |

If you have any questions please feel free to call.

Best Regards!

Reed

added 350K on oct 1, 1995

Ron Rakow added to my acct 58K as of 10/1/95 for payment of $2400 shares of Earthlink

Exhibit 13 Page 1

USA1992

# TERMINATION OF CONSULTING AGREEMENT

The undersigned hereby agree that all consulting agreements (written or oral) between the undersigned are hereby terminated, and the parties agree that neither party has any liability to the other under any such written or oral consulting agreement, and neither party is owed any money from the other under any arrangement or agreement.

EXECUTED as of the 4th day of ~~December, 2001~~. January 2002

BARGAIN NETWORK, INC., a California corporation, formerly "Century Direct, Inc." and "Century Direct Marketing, Inc."

By ______________________
Christian Hunter,
Chief Executive Officer

______________________
Ronald Rakow

Exhibit 132
Page 1 of 1

C:\WINNT\Profiles\FASHTI-1.000\LOCALS~1\Temp\Termination Consulting Agrmt.doc
1/4/02

000126

USA20381

☐ VOID ☐ CORRECTED

| | | | |
|---|---|---|---|
| PAYER'S name, street address, city, state, ZIP code, and telephone no.<br>CENTURY DIRECT, INC.<br>7404 Hollister Avenue<br>Goleta, CA 93117 | 1 Rents $<br>2 Royalties $<br>3 Other income $ | OMB No. 1545-0115<br>2000<br>Form 1099-MISC | Miscellaneous Income |
| PAYER'S Federal identification number 77-0410768 / RECIPIENT'S identification number 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 | 4 Federal income tax withheld $ | 5 Fishing boat proceeds $ | Copy C For Payer |
| RECIPIENT'S name, address, and ZIP code<br>RAKOW, RON<br>P.O. BOX 2429<br>SANTA BARBARA CA 93120 | 6 Medical and health care payments $ | 7 Nonemployee compensation $ 15185.00 | For Privacy Act and Paperwork Reduction Act Notice, see the 2000 General Instructions for Forms 1099, 1098, 5498, and W-2G. |
| | 8 Substitute payments in lieu of dividends or interest $ | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | |
| | 10 Crop insurance proceeds $ | 11 State income tax withheld $ | |
| Account number (optional) / 2nd TIN Not. ☐ | 12 State/Payer's state number | 13 $ | |

Form 1099-MISC 39-1908647 Department of the Treasury - Internal Revenue Service

0000(

USA202

Exhibit 149
Page 1 of 1

☐ VOID ☐ CORRECTED

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1 Rents | OMB No. 1545-0115 | |
|---|---|---|---|
| CENTURY DIRECT, INC.<br>7404 Hollister Avenue<br>Goleta, CA 93117 | $<br>2 Royalties<br>$<br>3 Other income<br>$ | 2000<br>Form 1099-MISC | Miscellaneous Income |

| PAYER'S Federal identification number | RECIPIENT'S identification number | 4 Federal income tax withheld | 5 Fishing boat proceeds | Copy C For Payer |
|---|---|---|---|---|
| ??-0410768 | 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 | $ | $ | |
| RECIPIENT'S name, address, and ZIP code | | 6 Medical and health care payments | 7 Nonemployee compensation | For Privacy Act and Paperwork Reduction Act Notice, see the 2000 General Instructions for Forms 1099, 1098, 5498, and W-2G. |
| DENISE DEL BIANCO BUS. SVCES.<br>DENISE DEL BIANCO BUSINESS SERVICES<br>4549 VIA HUERTO<br>SANTA BARBARA, CA 93110 | | $ | $ 57500.00 | |
| | | 8 Substitute payments in lieu of dividends or interest<br>$ | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | |
| | | 10 Crop insurance proceeds<br>$ | 11 State income tax withheld<br>$ | |
| Account number (optional) | 2nd TIN Not. ☐ | 12 State/Payer's state number | 13<br>$ | |

Form 1099-MISC

39-1908847

Department of the Treasury - Internal Revenue Service

DETACH BEFORE MAILING

000003

USA202

Exhibit 150
Page 1 of 1

☐ VOID ☐ CORRECTED

**Miscellaneous Income** — OMB No. 1545-0115 — **2001** — Form **1099-MISC** — Copy C For Payer

PAYER'S name, street address, city, state, and ZIP code
BARGAIN NETWORK, INC.
PMB 402, 2022 CLIFF DRIVE
SANTA BARBARA, CA 93109

PAYER'S Federal identification number: 77-0410768

RECIPIENT'S identification number: 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

RECIPIENT'S name, address, and ZIP code
DENISE DEL BIANCO BUS. SVCES.
DENISE DEL BIANCO BUSINESS SERVICES
4549 VIA HUERTO
SANTA BARBARA CA 93110

Account number (optional) | 2nd TIN not. ☐

| | |
|---|---|
| 1 Rents $ | 2 Royalties $ |
| 3 Other income $ | 4 Federal income tax withheld $ |
| 5 Fishing boat proceeds $ | 6 Medical and health care payments $ |
| 7 Nonemployee compensation $ 122500.00 | 8 Substitute payments in lieu of dividends or interest $ |
| 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds $ |
| 11 | 12 |
| 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney $ |
| 15 | 16 State tax withheld $ $ |
| 17 State/Payer's state no. | 18 State income $ $ |

For Privacy Act and Paperwork Reduction Act Notice, see the 2001 General Instructions for Forms 1099, 1098, 5498, and W-2G.

Form 1099-MISC — 39-1908647 — Department of the Treasury - Internal Revenue Service

☐ VOID ☐ CORRECTED

**Miscellaneous Income** — OMB No. 1545-0115 — **2002** — Form **1099-MISC** — Copy C For Payer or State Copy

PAYER'S name, street address, city, state, ZIP code, and telephone no.
BARGAIN NETWORK, INC.
7404 Hollister Avenue
Goleta, CA 93117

PAYER'S Federal identification number: 77-0410768

RECIPIENT'S identification number: 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

RECIPIENT'S name, address (including apt. no.), city, state, and ZIP code
DENISE DEL BIANCO BUS. SVCES.
DENISE DEL BIANCO BUSINESS SERVICES
4549 VIA HUERTO
SANTA BARBARA CA 93110

Account number (optional) | 2nd TIN not. ☐

| | |
|---|---|
| 1 Rents $ | 2 Royalties $ |
| 3 Other income $ | 4 Federal income tax withheld $ |
| 5 Fishing boat proceeds $ | 6 Medical and health care payments $ |
| 7 Nonemployee compensation $ 20000.00 | 8 Substitute payments in lieu of dividends or interest $ |
| 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds $ |
| 11 | 12 |
| 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney $ |
| 15 | 16 State tax withheld $ $ |
| 17 State/Payer's state no. | 18 State income $ $ |

For Privacy Act and Paperwork Reduction Act Notice, see the 2002 General Instructions for Forms 1099, 1098, 5498, and W-2G.

Form 1099-MISC — Department of the Treasury - Internal Revenue Service

USA202

Exhibit 151
Page 1 of 2

DO NOT CASH THIS CHECK UNLESS YOU CAN SEE THE WORD CHECK PROTECT ON THE BACK OF THIS CHECK
HOLD AT AN ANGLE TOWARD LIGHT TO VERIFY SAFETY FEATURES ON THE BACK

REED E. SLATKIN
11684 VENTURA BOULEVARD #922
STUDIO CITY, CALIFORNIA 91604
(818) 509-7768

Date 12-08-99
187 PRR

Check No. 10260
16-49/1220

UNION BANK OF CALIFORNIA
2001 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612

TWO HUNDRED THOUSAND DOLLARS EXACTLY

Pay to the order of DENISE DEL BIANGO

**200,000.00

VOID VOID VOID VOID VOID

Phyllis Rogers

⑈010260⑈ ⑆122000496⑆ 063005757⑈ ⑈0020000000⑈

MPSC 12/09/99
132327049

SEQ# 15-02651-00184-014

▶122000661◀ L
1000 W TEMPLE LA,CA 19
12/09/99 0299904743 CM
5351060
99

4580-226
▶121000651◀

0145 8677 8

WARNING DO NOT CASH THIS CHECK WITHOUT NOT SECURITY FEATURES ON FRONT AND BA

ENDORSE HERE
Denise Del Biango

NOTE THE ABOVE LINES ARE COMPOSED OF MICRO CONTAINING THE WORDS "SAFE". CHECK WITH MAGNI

DO NOT WRITE OR SIGN BELOW THIS LINE

Exhibit 214 Page 1

USA205

EXH 11
WIT DelBianco
DATE 6-14-02
MARTHA A. ADAMS
CSR 10345

☐ VOID ☐ CORRECTED

| | | | |
|---|---|---|---|
| PAYER'S name, street address, city, state, ZIP code, and telephone no.<br>REED E. SLATKIN<br>11684 VENTURA BLVD. #922<br>STUDIO CITY CA 91604<br>(818) 509-7768 | 1 Rents $<br>2 Royalties $<br>3 Other income $ | OMB No. 1545-0115<br>2000<br>Form 1099-MISC | Miscellaneous Income |
| PAYER'S Federal identification number 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 / RECIPIENT'S identification number 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 | 4 Federal income tax withheld $ | 5 Fishing boat proceeds $ | Copy C For Payer |
| RECIPIENT'S name<br>CHARLEY CHARTOFF<br>TOPSIGHT ENTERTAINMENT | 6 Medical & health care pmts. $ | 7 Nonemployee compensation $ 6000.00 | For Privacy Act and Paperwork Reduction Act Notice, see the 2000 General Instructions for Forms 1099, 1098, 5498, and W-2G. |
| Street address (including apt no.)<br>8831 SUNSET BLVD.#202 | 8 Substitute payments in lieu of dividends or interest $ | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ☐ | |
| City, state, and ZIP code<br>LOS ANGELES CA 90069 | 10 Crop insurance proceeds $ | 11 State income tax withheld $ | |
| Account number (optional) / 2nd TIN Not. ☐ | 12 State/Payer's state number | 13 $ | |

Form 1099-MISC
DXA
Department of the Treasury - Internal Revenue Service

☐ VOID ☐ CORRECTED

| | | | |
|---|---|---|---|
| PAYER'S name, street address, city, state, ZIP code, and telephone no.<br>REED E. SLATKIN<br>11684 VENTURA BLVD. #922<br>STUDIO CITY CA 91604<br>(818) 509-7768 | 1 Rents $<br>2 Royalties $<br>3 Other income $ | OMB No. 1545-0115<br>2000<br>Form 1099-MISC | Miscellaneous Income |
| PAYER'S Federal identification number 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 / RECIPIENT'S identification number 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 | 4 Federal income tax withheld $ | 5 Fishing boat proceeds $ | Copy C For Payer |
| RECIPIENT'S name<br>DENISE DEL BIANCO | 6 Medical & health care pmts. $ | 7 Nonemployee compensation $ 1125000.00 | For Privacy Act and Paperwork Reduction Act Notice, see the 2000 General Instructions for Forms 1099, 1098, 5498, and W-2G. |
| Street address (including apt no.)<br>4549 VIA HUERTO | 8 Substitute payments in lieu of dividends or interest $ | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ☐ | |
| City, state, and ZIP code<br>SANTA BARBARA CA 93110 | 10 Crop insurance proceeds $ | 11 State income tax withheld $ | |
| Account number (optional) / 2nd TIN Not. ☐ | 12 State/Payer's state number | 13 $ | |

Form 1099-MISC
DXA
Department of the Treasury - Internal Revenue Service

11

☐ VOID ☐ CORRECTED

| | | | |
|---|---|---|---|
| PAYER'S name, street address, city, state, ZIP code, and telephone no.<br>REED E. SLATKIN<br>11684 VENTURA BLVD. #922<br>STUDIO CITY CA 91604<br>(818) 509-7768 | 1 Rents $<br>2 Royalties $<br>3 Other income $ | OMB No. 1545-0115<br>2000<br>Form 1099-MISC | Miscellaneous Income |
| PAYER'S Federal identification number 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 / RECIPIENT'S identification number 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 | 4 Federal income tax withheld $ | 5 Fishing boat proceeds $ | Copy C For Payer |
| RECIPIENT'S name<br>ERIC LIBBEY | 6 Medical & health care pmts. $ | 7 Nonemployee compensation $ 82500.00 | For Privacy Act and Paperwork Reduction Act Notice, see the 2000 General Instructions for Forms 1099, 1098, 5498, and W-2G. |
| Street address (including apt no.)<br>P O BOX 491 | 8 Substitute payments in lieu of dividends or interest $ | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ☐ | |
| City, state, and ZIP code<br>SANTA YNEZ CA 93460 | 10 Crop insurance proceeds $ | 11 State income tax withheld $ | |
| Account number (optional) / 2nd TIN Not. ☐ | 12 State/Payer's state number | 13 $ | |

Form 1099-MISC
Department 2072-2044057
Exhibit 15 Page 1

4125-028

REED E. SLATKIN
(9510)
LEDGER REPORT
FROM 01-01-00 THROUGH 12-31-00 PAGE 88
AS OF 12:30:33 29 Jan 2001

| CKB/ACCT | GJ-REF.... | DATE.... | PAYEE/PAYOR......... | DESCRIPTION................... | CONTRA...... | .........DEBIT | .........CREDIT | SOURCE |
|---|---|---|---|---|---|---|---|---|
| **4125-028** | | | SANTA BARBARA CAPITAL LLC | | | | | |
| | | | BEG. BALANCE 12-31-99 | | | 0.00 | | |
| 11000*1 | 10135P | 04-28-00 | SANTA BARBARA CAPITA L LLC | Inv: 10031.SBCAP QUARTER ENDE D 3.31.00 | 1001-001 | 19,540.00 | | D1364 |
| 12075*1 | 11223P | 11-06-00 | SANTA BARBARA CAPITA L LLC | Inv: 11107. | 1001-001 | 4,950.00 | | D1493 |
| | | | | Ledger Activity.............. | | 24,490.00 | | |
| | | | | Closing Balance.............. | | 24,490.00 | | ****** |
| **4125-029** | | | DENISE DEL BIANCO | | | | | |
| | | | 553.86.1111 | | | | | |
| | | | BEG. BALANCE 12-31-99 | | | 0.00 | | |
| W000709* | CW000709*1 | 07-17-00 | DENISE DEL BIANCO | *go over w/ reed* | 1001-001 | 200,000.00 | | CD |
| W000713* | CW000713*1 | 07-21-00 | DENISE DEL BIANCO | | 1001-001 | 125,000.00 | | CD |
| W000714* | CW000714*1 | 07-27-00 | DENISE DEL BIANCO | | 1001-001 | 300,000.00 | | CD |
| W000904* | CW000904*1 | 09-05-00 | DENISE DEL BIANCO | | 1001-001 | 250,000.00 | | CD |
| W001009* | CW001009*1 | 10-20-00 | DENISE DEL BIANCO | | 1001-001 | 250,000.00 | | CD |
| | | | | Ledger Activity.............. | | 1,125,000.00 | | |
| | | | | Closing Balance.............. | | 1,125,000.00 | | ****** |
| **4125-900** | | | CONSULTING-MISCELLANEOUS | | | | | |
| | | | BEG. BALANCE 12-31-99 | | | 3,790,815.00 | | |
| 10463*1 | 9595P | 01-18-00 | CORPORATE DEVELOPMEN T INTL | Inv: 9494. | 1001-001 | 10,000.00 *to 4125-025* | | D1301 |
| 10745*1 | 9877P | 03-09-00 | LARRY HAIMOVITCH | Inv: 9776. | 1001-001 | 800.00 *?* | *who* | D1330 |
| | 000524*1 | 05-22-00 | TRI COUNTIES COUNSEL ING | PREPIAD CONSULTING FEE REFUND ED | 1001-001 | *?* | 6,339.54 | CR |
| 12290*1 | 11439P | 12-01-00 | ROBERT RANDM | Inv: 11322. | 1001-001 *1099* | 8,000.00 *?* | | D1317 |
| | | | | Ledger Activity.............. | | 18,800.00 | 6,339.54 | |
| | | | | Closing Balance.............. | | 3,811,275.46 | | ****** |
| **4160-000** | | | DUES | | | | | |
| | | | BEG. BALANCE 12-31-99 | | | 3,002.29 | | |
| | | | | Ledger Activity.............. | | 0.00 | | |
| | | | | Closing Balance.............. | | 3,286.29 | | ****** |
| **4160-001** | | | DUES | | | | | |
| | | | BEG. BALANCE 12-31-99 | | | 3,002.29 | | |
| 10993*1 | 10130P | 04-28-00 | CITIBANK ADVANTAGE | Inv: 10026.CITIPR ACSC | 1001-001 | 40.00 | | D1364 |
| 11309*1 | 10452P | 06-26-00 | CITIBANK ADVANTAGE | Inv: 10341.CITIPR | 1001-001 | 85.00 | | D1399 |
| 11785*1 | 10929P | 09-08-00 | WF PROCESSING CENTER | Inv: 10817. A/C 5490.9600.038 0.0928 | 1001-001 | 43.00 | | D1453 |
| 11021*1 | 10965P | 09-25-00 | CITIBANK ADVANTAGE | Inv: 10853.CITIPR AOPA | 1001-001 | 39.00 | | D1463 |

USA 40525

Ex. 219 Pg. 1

# 1998
## Reported Income from Schedules C & D

| | Rakow | Del Bianco |
|---|---|---|
| C | $100,729 | $34,400 |
| | $25,000 - Gallery<br>$75,729 - Alan Zaplin<br>$100,729 | $32,000 - Rakow<br>$2,400 - "Other Income"<br>$34,400 |
| D | $0 | $149,980 - Earthlink<br>$214,190 - AIME |

Exhibit 326

# 1999
# Reported Income from Schedules C & D

| | Rakow | Del Bianco |
|---|---|---|
| C | $158,000 | $34,500 |
| | $88,000 - DDBBS<br>$70,000 - Gallery<br>$158,000 | $32,000 - Rakow<br>$2,500 - "Other Income"<br>$34,500 |
| D | $0 | $723,566 - Earthlink<br>$53,331 - AIME |

Exhibit 327

# 2000
# Reported Income from Schedules C & D

| | Rakow | Del Bianco |
|---|---|---|
| C | $264,180 | $1,189,570 |
| | $15,185 - CDM<br>$2,750 - "Sales"<br>$106,045 - Gallery<br>$132,000 - Del Bianco<br>$8,200 - "Misc. Sales"<br>$264,180 | $1,125,000 - Reed Slatkin<br>$57,500 - CDM<br>$7,070 - Addt'l Income<br>$1,189,570 |
| D | $0 | $565,099 - Earthlink |

Exhibit 328

# 2001

# Reported Income from Schedules C & D

| | Rakow | Del Bianco |
|---|---|---|
| C | $133,965 | $416,960 |
| | $80,000 - Del Bianco<br>$17,000 - "Reimbursed Expenses"<br>$21,070 - "Sales"<br>$1,145 - "Social Security Check"<br>$14,750 - "Art Sales"<br>$133,965 | $122,500 - CDM/BN<br>$31,960 - CDM/BN<br>$250,000 - Reed Slatkin<br>$12,500 - "Refund of $ Sent . . . for Slatkin"<br>$416,960 |
| D | $0 | N/A |

Exhibit 329

Schedule C

Ron Rakow
R R Finance
1999

| | | | | | |
|---|---|---|---|---|---|
| Income | DDBBS | | 88,000.00 | | |
| | Zaplin-Lampert | | 70,000.00 | | |
| | Total Income | | | | 158,000.00 |
| Expense | Telephone | | 7,138.62 | | |
| | Rent | | 7,020.00 | | |
| | Auto Milage 11,750 @ .325 | | 3,818.75 | | |
| | Professional Fees | | 3,660.80 | | |
| | Promotion | | 3,596.20 | | |
| | Restaurant @ 50% | 6,374.58 | 3,187.29 | | |
| | Office | | 2,352.50 | | |
| | Freight & Postage | | 474.14 | | |
| | Utilities | | 350.00 | | |
| | Bank Charges | | 102.00 | | |
| | Donation | | 200.00 | | |
| | Subs & Publ | | 74.00 | | |
| | Travel Expense | | | | |
| | * -Transport | 9,824.61 | | | |
| | Travel-Hotel | 1,974.11 | | | |
| | * -Rent&Park | 839.03 | | | |
| | Total Travel Exp | | 12,637.75 | | |
| | Total | | | 44,612.05 | |
| | Equipment | | | | |
| | Computer Purchased 7/1/99 | | 2,522.70 | | |
| | Computer CD Drive 12/13/99 | | 863.95 | | |
| | Total Equipment | | | 3,386.65 | |
| | Total R R Fin Exp | | | | 47,998.70 |
| | Net | | | | 110,001.30 |

Ex. 334 Pg. 1

USA1005

Ron Rakow
2000
Schedule C Information

| | |
|---|---|
| Income | 264,179.95 |
| Expenses | 215,532.60 |
| Equipment purchase in 2000 | 49,446.01 |

Ex. 336 Pg. 1

USA1165

Ron Rakow
2001
Income & Expenses Summary

Income:

| | | | |
|---|---|---|---|
| Form 1099 | 80,000.00 | | |
| Remibursed Expenses | 17,000.00 | | |
| Sales | 21,070.00 | | |
| Social Security Check | 1,145.00 | | |
| Total Income | | | 119,215.00 |

Expenses:

| | | | |
|---|---|---|---|
| RR Finance | | | |
| RR-Ck | 14,012.31 | | |
| Other | 11,274.00 | | |
| DDBBS | 3,379.80 | | |
| | | 28,666.11 | |
| RR Photo | | | |
| RR-Ck | 42,354.00 | | |
| Other | 19,236.00 | | |
| Pacific Images | 15,091.36 | | |
| DDBBS | 2,530.19 | | |
| | | 79,211.55 | |
| | | | 107,877.66 |

| | |
|---|---|
| Profit Before Depreciation | 11,337.34 |

Last year(2000) Depreciation Expense was $13,823.00

Estimated 2001 Depreciation -15,000.00

-3,662.66

*Note Expense amount Unknown

Equipment Purchased during the year

| | |
|---|---|
| RR Finance | 6,640.78 |
| RR Photo | 24,507.56 |
| This amount will be depreciated by D.H. along with a depreciation deduction for previous years equipment purchases. | 31,148.34 |

Ex. 338 Pg. 1

USA1152

DDBBS
1998
Loan To Ron Rakow

| Description | | Amount |
|---|---|---|
| DDBBS-Julie R. | | 64,750.00 |
| R R Finance | | 6,581.88 |
| Ron Personal Exp | | 120,406.78 |
| Ron Credit Cards | | 31,500.00 |
| Ron Photo-Cap | 16,293.39 | |
| Ron Photo- Exp | 2,427.93 | |
| | | 18,721.32 |
| Total Paid Out | | 241,959.98 |
| Less Amount Paid to DDBBS by RR | | 68,000.00 |
| | Loan Total | 173,959.98 |

Ex 268 Pg. 1

USA202'

Launch Media
1998

Loans To Ron Rakow

| | | |
|---|---|---|
| Ron Rakow Credit Cards | 45,737.27 | |
| Ron Rakow Personal | 69,013.00 | |
| | | 114,750.27 |
| Return of Capital-Denise DelBianco | | 52,322.86 |
| | | 167,073.13 |

Ex. 270 Pg. 1

USA1980

DDBBS
1999
Loans To Ron Rakow

| Bank Acct/Ccard | Quarter 1 | Quarter 2 | Quarter 3 | Quarter 4 | Totals |
|---|---|---|---|---|---|
| MNBA C Card | 7268.28 | 0.00 | 0.00 | 0.00 | 7,268.28 |
| Optima C Card | 0.00 | 254.72 | 1,156.39 | 2,140.57 | 3,551.68 |
| City Gold C Card | 1,634.34 | 4,042.93 | 487.20 | 7,990.87 | 14,155.34 |
| Comm Bk | 40,010.86 | 3,769.94 | 842.00 | 1,145.97 | 45,768.77 |
| Wells Fargo Bk | 35,772.34 | 48,597.17 | 16,102.28 | 57,646.36 | 158,118.15 |
| Bank of America | 1,000.00 | 0.00 | 6,500.00 | 18,636.37 | 26,136.37 |
| Sanwa Bk | 13,592.42 | 15,082.55 | 21,743.26 | 13,187.40 | 63,605.63 |
| Totals | 99,278.24 | 71,747.31 | 46,831.13 | 100,747.54 | 318,604.22 |

1999 1099 To Ron Rakow 88,000.00

Repay Loan 9/21/99 By Ron Rakow 106,826.98

| | |
|---|---|
| Ron Self | 111,468.29 |
| P h R R (Cap) | 14,721.63 |
| P H R R (Exp) | 7,880.97 |
| R R Fin | 12,834.13 |
| Pacific Image | 14,500.00 |
| Home Sav (JR) | 63,040.00 |
| R R Credit Card Pay | 94,159.20 |
| | 318,604.22 |

Ex. 272 Pg. 1

USA1538

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE MARGARET M. MORROW, JUDGE PRESIDING

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, PLAINTIFF, | : | PAGES 244 - 473 |
| VS. | : | NO. CR 04-1563-MMM |
| RONALD LEON RAKOW, DENISE DEL BIANCO, DEFENDANTS. | : | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS
JURY TRIAL - DAY 2
LOS ANGELES, CALIFORNIA
THURSDAY, JULY 6, 2006

MARK SCHWEITZER, CSR, RPR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
181-H ROYBAL FEDERAL BUILDING
255 EAST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012
(213) 626-7570



**Appearances of Counsel:**

For the Plaintiff:

Office of the U.S. Attorney
By Jason Gonzalez, AUSA
Kendra McNally, AUSA
312 North Spring Street
11th Floor
Los Angeles, CA 90012
(213) 894-2253

For Defendant Rakow:

Office of the Federal Public Defender
By Charles Brown, DFPD
Peter Johnson, DFPD
321 East Second Street
Los Angeles, CA 90012
(213) 894-4795

For Defendant Del Bianco:

Law Offices of Errol H. Stambler
By Errol H. Stambler, Esq.
10880 Wilshire Boulevard
Suite 1050
Los Angeles, CA 90024
(310) 473-4525



I N D E X


TIMOTHY MATHERS, SWORN. .............................. 253

DIRECT EXAMINATION BY MR. GONZALEZ: .................... 253
CROSS-EXAMINATION BY MR. BROWN: ........................ 273
CROSS-EXAMINATION BY MR. STAMBLER: ..................... 282
REDIRECT EXAMINATION BY MR. GONZALEZ: .................. 286
RECROSS-EXAMINATION BY MR. BROWN: ...................... 290
RECROSS-EXAMINATION BY MR. STAMBLER: ................... 294
FURTHER REDIRECT EXAMINATION BY MR. GONZALEZ: .......... 298

JOANNE RUBENSTEIN, SWORN. ............................ 307

DIRECT EXAMINATION BY MR. GONZALEZ: .................... 314
CROSS-EXAMINATION BY MR. JOHNSON: ...................... 321
CROSS-EXAMINATION BY MR. STAMBLER: ..................... 324

PATRICIA AH YAT, SWORN. .............................. 327

DIRECT EXAMINATION BY MR. GONZALEZ: .................... 327
CROSS-EXAMINATION BY MR. JOHNSON: ...................... 343

PHYLLIS DENISON, SWORN. .............................. 346

DIRECT EXAMINATION BY MR. GONZALEZ: .................... 346
CROSS-EXAMINATION BY MR. JOHNSON: ...................... 374

(HEARING HELD OUTSIDE THE PRESENCE OF THE JURY.) ....... 393

CROSS-EXAMINATION BY MR. STAMBLER: ..................... 393
REDIRECT EXAMINATION BY MR. GONZALEZ: .................. 404

DAVID MILTON HELLMAN, SWORN. ......................... 407

DIRECT EXAMINATION BY MR. GONZALEZ: .................... 407
CROSS-EXAMINATION BY MR. BROWN: ........................ 446


E X H I B I T S


(Exhibit 9 received.) ................................ 254

(Exhibit 31 received.) ............................... 261

(Exhibit 55 received.) ............................... 262




E X H I B I T S (CONTINUED)


(Exhibit 34 received.) ............................... 267

(Exhibit 46 received.) ............................... 271

(Exhibit 58 received.) ............................... 272

(Exhibit 59 received.) ............................... 285

(Exhibit 9 received.) ................................ 297

(Exhibit 35 received.) ............................... 300

(Exhibit 36 received.) ............................... 302

(Exhibit 37 received.) ............................... 303

(Exhibit 38 received.) ............................... 304

(Exhibit 39 received.) ............................... 305

(Exhibit 48 received.) ............................... 352

(Exhibit 1208 received.) ............................. 385

(Exhibit 1207, Page 1, received.) .................... 403

(Exhibits 13-18 received.) ........................... 415

(Exhibits 6-8 received.) ............................. 418

(Exhibits 41-45 received.) ........................... 420

(Exhibits 332-339 received.) ......................... 425

(Exhibit 327 received.) .............................. 428

(Exhibit 326 received.) .............................. 429

(Exhibit 328 received.) .............................. 430

(Exhibit 329 received.) .............................. 431

(Exhibits 32, 51-54 received.) ....................... 432

(Exhibit 1118 received.) ............................. 459

(Exhibit 1121 received.) ............................. 460


EXHIBIT B

Q. Did you continue to be paid by Mr. Slatkin for some period of time after April of 2000 when you stopped working there?
A. Yes.
Q. Why?
A. I would occasionally stop by the office and do errands.
Q. Do you know the defendant Ronald Rakow?
A. Yes.
Q. How do you know him?
A. Worked for Mr. Slatkin.
Q. Who worked for Mr. Slatkin?
A. Mr. Rakow.
Q. Approximately when did you first meet him?
A. Late 1980's.
Q. What was your understanding of their relationship?
A. Mr. Rakow was a friend of Mr. Slatkin's.
Q. Do you see the Mr. Rakow that you are describing in court today?
A. Yes.
Q. Can you point him out?
A. Second man in the front row.
THE COURT: The record will reflect that the witness identified the defendant Mr. Rakow.
Q. BY MR. GONZALEZ: You mentioned that Mr. Rakow worked for Reed Slatkin. What did he do?

317

A. He invested -- investigated companies for Mr. Slatkin. He brought in investors to the office. He traveled to Europe and New York. He would teleconference with Mr. Slatkin from Europe, New York. He transported paintings. He also would come to the office to pick up checks, and he brought out large bags, trash bags.
Q. Over what period of time did Mr. Rakow do this work?
A. From 1990 to 2001.
Q. When you stopped working there?
A. Correct. Yes.
Q. And how do you know that he was doing these things?
A. I saw him doing it.
Q. Do you know defendant Denise Del Bianco?
A. Yes.
Q. How do you know her?
A. I was introduced to her by Mr. Slatkin.
Q. When was that?
A. Approximately early 1990's.
Q. What was your understanding of her relationship with defendant Rakow?
A. Ms. Del Bianco was Mr. Rakow's girlfriend.
Q. While you worked for Mr. Slatkin, did you -- did Ms. Del Bianco work there as well?
A. Yes.
Q. When did she begin working there?

318

A. January of 2000.
Q. What would she do?
A. She met with Reed. She --
THE COURT: Reed is Mr. Slatkin?
THE WITNESS: Oh, I'm sorry.
THE COURT: That's okay. Just so the jurors understand.
THE WITNESS: Okay. Sorry. She met with Mr. Slatkin. She typed, filed, shredded documents, talked to church people, answered phone calls, returned phone calls. She picked up an international telephone for Mr. Rakow. She traveled with Ms. Janu and Mr. Rakow.
THE COURT: Ms. Janu also worked in the office?
THE WITNESS: Yes. That's all I recall at this time.
Q. BY MR. GONZALEZ: How do you know she was doing this?
A. I was there most of the time.
Q. Did you work close to one another while you were at Mr. Slatkin's home office?
THE COURT: Who are you referring to?
MR. GONZALEZ: I'm sorry.
Q. Did you work close to Ms. Del Bianco while you worked at Mr. Slatkin's home office?
A. Occasionally.
Q. Where would she work, and where would you work?

319

A. I worked in the dining room, and she worked in the living room or with Mr. Slatkin or upstairs using the telephone.
Q. Did you discuss with Denise Del Bianco what she thought of the work she was doing?
A. No.
Q. Did she ever describe to you what she thought of the work that she was doing?
A. Yes.
MR. JOHNSON: Objection, your Honor. Asked and answered.
THE COURT: Overruled.
Q. BY MR. GONZALEZ: Did she ever describe to you what she thought of the work that she was doing?
A. Yes.
Q. What did she say?
A. She said that she would be working for Mr. Slatkin, and this was something new.
Q. What did you understand that to mean?
A. And she didn't have any bookkeeping experience.
Q. What did you understand that --
A. She would be talking to church people.
Q. What hours did Ms. Del Bianco keep?
A. From January of 2000 to March of 2000, it varied daily.
Q. And what was the variance? Was it between one and ten

A. Yes.
Q. And the expense section, that's down here, part 2?
A. Correct.
Q. Does consulting income typically get reported on a Schedule C?
A. Generally consultants are self-employed persons, yes.
Q. What's the -- for a Schedule D -- does Exhibit 42 have a Schedule D, sir?
A. No.
Q. Why would someone not have a Schedule D on their return?
A. They would not have a Schedule D if they did not report any capital transactions during the year or if they did not have any capital loss carry-forwards.
Q. Mr. Hellman, is it important, when you're preparing taxes, that you have accurate information regarding someone's income?
A. Yes.
Q. Why is that?
A. If you don't have accurate information, you cannot prepare an accurate income tax return.
Q. Does that include the information that ends up on a Schedule C?
A. Yes.
Q. How about a Schedule D?
A. Same.



Q. Please look at Exhibits 333 -- I'm sorry. 332, 334 -- let me start over. 330 through 339.
A. Yes, I've looked at these before.
Q. What are Exhibits 330 through 339?
A. Most all of it are copies of documents that I received for purposes of preparing the tax returns.
Q. Who did you get them from?
A. From either Mr. Rakow or Ms. Del Bianco.
Q. And for what returns did you refer to them?
A. Well, these -- the initial ones in Exhibit 330 cover -- well, the very first item is tax year 1985, but they are then 1994, '95, and carry on up through '97. And Exhibit 31 deals with 1995 and 1997. And Exhibit 332 deals with 1998. And Exhibit 333 deals with 1998. 334 is -- deals with 1999. And 335 also deals with 1999. And 336 deals with 2000. 337 also is 2000. 338 is 2001. And 339 is also 2001.
MR. GONZALEZ: Your Honor, move to admit Exhibits 330 through 339.
MR. BROWN: Objection. 403 with respect to 330, your Honor, and 331.
THE COURT: I'm going to sustain that for now, and we can discuss that further outside the presence of the jury. I'll admit 332 through 339.
**(Exhibits 332-339 received.)**
Q. BY MR. GONZALEZ: Mr. Hellman, turning back to



Exhibit 42, I'll just put it on the overhead here. This is the Schedule C for '99 that we were just looking at before; right?
A. Yes.
Q. And the income amount that's indicated here, what does that first line indicate?
A. That's gross income that Mr. Rakow had during that year.
Q. Does that form break out the individual sources of income that may or may not have totaled up to equal 158,000?
A. No, it does not.
Q. So there could be several sources of income that together add up to that amount; is that right?
A. Yes.
Q. For 1998, what were the sources of income that added up to that amount, 158,000 for Mr. Rakow?
A. For 1999?
Q. I'm sorry. For 1999. I misspoke.
A. Exhibit 334, there is a summary. And it's primarily -- it comprised two items. One of them was income that Mr. Rakow received from Denise Del Bianco Business Services. And the second -- that was $88,000. And the second item was from the Zaplin-Lambert Gallery, and that was for $70,000.
Q. And those two figures together add up to 158- as indicated there?
A. Yes.



Q. And that's the figure that is on the return?
A. Yes.
Q. Sir, have you seen some charts for both Del Bianco's returns and Rakow's returns that break out the Schedule C and Schedule D amounts?
A. Charts that you've prepared, yes.
Q. Yes. Would you please turn to Exhibit 326. What is it?
A. It's a summary of the Schedule C and Schedule D income for Rakow and Del Bianco for 1998.
Q. Have you reviewed that, sir?
A. Yes.
Q. Did you compare it against the underlying documents?
A. Yes.
Q. Is it an accurate reflection of the components of the income that you put into those returns?
A. Yes.
MR. GONZALEZ: Your Honor, move to admit Exhibit 326.
MR. BROWN: Your Honor, I'm going to object on 403 and foundational grounds. Is this referring to 1998, and he's comparing it with the 1999 --
MR. GONZALEZ: I'm sorry. That's my mistake.
THE COURT: You want to restate it, then?
Q. BY MR. GONZALEZ: Exhibit 327.
THE COURT: You'd like the witness to look at 327?

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
---
HONORABLE MARGARET M. MORROW, JUDGE PRESIDING
---

UNITED STATES OF AMERICA, PLAINTIFF, : PAGES 474 - 635

VS. : NO. CR 04-1563-MMM

RONALD LEON RAKOW, DENISE DEL BIANCO, DEFENDANTS.

REPORTER'S TRANSCRIPT OF PROCEEDINGS
JURY TRIAL - DAY 3
LOS ANGELES, CALIFORNIA
FRIDAY, JULY 7, 2006

MARK SCHWEITZER, CSR, RPR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
181-H ROYBAL FEDERAL BUILDING
255 EAST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012
(213) 626-7570



Appearances of Counsel:

For the Plaintiff:

Office of the U.S. Attorney
By Jason Gonzalez, AUSA
Kendra McNally, AUSA
312 North Spring Street
11th Floor
Los Angeles, CA 90012
(213) 894-2253

For Defendant Rakow:

Office of the Federal Public Defender
By Charles Brown, DFPD
Peter Johnson, DFPD
321 East Second Street
Los Angeles, CA 90012
(213) 894-4795

For Defendant Del Bianco:

Law Offices of Errol H. Stambler
By Errol H. Stambler, Esq.
10880 Wilshire Boulevard
Suite 1050
Los Angeles, CA 90024
(310) 473-4525



I N D E X


(HEARING HELD OUTSIDE THE PRESENCE OF THE JURY.)........ 479
DAVID MILTON HELLMAN, PREVIOUSLY SWORN.................. 480
CROSS-EXAMINATION (CONTINUED) BY MR. BROWN: ............ 480
JOANNE LAUDON, SWORN.................................... 502
DIRECT EXAMINATION BY MR. GONZALEZ: .................... 502
CROSS-EXAMINATION BY MR. STAMBLER: ..................... 505
MICHAEL S. STERN, SWORN................................. 507
DIRECT EXAMINATION BY MS. McNALLY: ..................... 507
CROSS-EXAMINATION BY MR. BROWN: ........................ 520
CROSS-EXAMINATION BY MR. STAMBLER: ..................... 522
ROBERT RAKOW, SWORN..................................... 526
DIRECT EXAMINATION BY MS. McNALLY: ..................... 526
CROSS-EXAMINATION BY MR. JOHNSON: ...................... 541
CROSS-EXAMINATION BY MR. STAMBLER: ..................... 542
REDIRECT EXAMINATION BY MS. McNALLY: ................... 544
RECROSS-EXAMINATION BY MR. JOHNSON:..................... 545
JOSEPH BERNARD WHITE, SWORN............................. 550
DIRECT EXAMINATION BY MS. McNALLY: ..................... 550
CROSS-EXAMINATION BY MR. BROWN: ........................ 565
CROSS-EXAMINATION BY MR. STAMBLER: ..................... 576
BRINTON YOUNG, SWORN.................................... 580
DIRECT EXAMINATION BY MS. McNALLY: ..................... 580
CROSS-EXAMINATION BY MR. STAMBLER: ..................... 586
CAROLYN BRODERICK, SWORN................................ 589
DIRECT EXAMINATION BY MR. GONZALEZ: .................... 589
CROSS-EXAMINATION BY MR. BROWN: ........................ 607




E X H I B I T S


(Exhibit 331, Page 4, received.)........................ 479
(Exhibit 1128 received.)................................ 481
(Exhibit 1129 received.)................................ 482
(Exhibit 1131 received.)................................ 484
(Exhibit 1133 received.)................................ 488
(Exhibit 1135 received.)................................ 490
(Exhibit 1137 received.)................................ 491
(Exhibit 122 received.)................................. 509
(Exhibits 118, 119, and 120 received.).................. 515
(Exhibit 117 received.)................................. 516
(Exhibit 116 received.)................................. 526
(Exhibit 65 received.).................................. 533
(Exhibit 64 received.).................................. 534
(Exhibit 61 received.).................................. 535
(Exhibit 81 received.).................................. 538
(Exhibit 82 received.).................................. 539
(Exhibit 87 received.).................................. 540
(Exhibit 83 received.).................................. 554
(Exhibit 84 received.).................................. 556
(Exhibit 85 received.).................................. 557
(Exhibit 86 received.).................................. 558
(Exhibit 89 received.).................................. 561
(Exhibit 90 received.).................................. 564
(Exhibit 100 received.)................................. 581

for Reed Slatkin, Ronald Rakow, and you?
MR. JOHNSON: Objection as to foundation.
THE COURT: Overruled.
THE WITNESS: Ron Rakow.
Q. BY MS. McNALLY: What was the extent of his involvement in the negotiations regarding your investment in AIME?
A. Financial.
Q. In the course of your investment with AIME, were there more than one offer made?
A. Yes.
Q. I'd like you to turn to volume 2 of the black binders that are behind you and look at Exhibit 62, please.
A. Okay.
Q. Do you recognize what that is?
A. Yes.
Q. What is it, please?
A. That's an offering opportunity to purchase shares from AIME.
Q. Was that part of the negotiations for your investment in AIME?
A. That's correct.
MS. McNALLY: The government moves the admission of Exhibit 62.
MR. JOHNSON: Your Honor, I would object as to foundation, as to how this --



THE COURT: I understand the objection. Sustained.
Q. BY MS. McNALLY: Mr. Rakow, did you know about this offer at the time it was made?
A. Yes.
Q. And was stock actually purchased on those terms?
A. No.
Q. Do you recall how much stock was purchased?
A. Nothing on this particular document that I'm aware of.
Q. You did invest, however, in AIME; is that correct?
A. That's correct.
Q. And you did purchase stock?
A. That's correct.
Q. How much stock was purchased?
A. About 1 million shares.
MR. JOHNSON: Your Honor, I'd object. Vague.
THE COURT: Sustained.
Q. BY MS. McNALLY: To your knowledge did Ronald Rakow have any ownership rights in the AIME stock purchase that was made in your name?
MR. JOHNSON: Objection as to speculation and foundation.
THE COURT: Overruled.
THE WITNESS: Yes.
Q. BY MS. McNALLY: Do you recall how much interest he had?
A. One third.



Q. One third of the stock?
A. One third of the total stock.
Q. I'd like you to turn now to Exhibit 65 marked for identification. Do you recognize this?
A. Yes.
Q. What is it?
A. It's a document which is used to deposit certificates into a brokerage account.
Q. And is that your signature in the lower left-hand corner?
A. Yes, it is.
Q. Is this an accurate record of what happened to the stock that was purchased?
MR. JOHNSON: Objection, your Honor. I think the foundation has to be laid that it's a business record kept by this individual.
THE COURT: Overruled.
THE WITNESS: Could you repeat that question?
(Record read.)
THE WITNESS: Yes.
Q. BY MS. McNALLY: The government moves the admission of Exhibit 65.
MR. JOHNSON: Just a continuing objection as to hearsay.
THE COURT: Overruled. Admitted.



**(Exhibit 65 received.)**
MS. McNALLY: Let me publish, your Honor.
Q. Mr. Rakow, what does this letter show?
A. This was the letter we were just talking about.
Q. Yes. Does it show the transfer of stock to the name of Reed Slatkin from your name?
A. Oh, yes. Sorry about that.
Q. Was this for all of the stock that was purchased by you to invest in AIME with Reed Slatkin and Ronald Rakow?
A. No.
Q. When this stock was transferred to Reed Slatkin's name, did you receive any payment?
A. No.
MR. JOHNSON: Objection, your Honor, as to leading.
THE COURT: Overruled.
Q. BY MS. McNALLY: Between 1997 and 2001, did you ever hire Ronald Rakow to perform consulting work for you?
A. Ronald Rakow was hired as a consultant, yes.
Q. I'd like you to turn to Exhibit 64, please. Do you recognize that document?
A. Yes.
Q. What is it?
A. It's an invoice for consulting work that was provided by Ron.
Q. To whom is it addressed?

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

**HONORABLE MARGARET M. MORROW, JUDGE PRESIDING**

---

UNITED STATES OF AMERICA, : PAGES 636 - 883
PLAINTIFF, :
VS. : NO. CR 04-1563-MMM
RONALD LEON RAKOW,
DENISE DEL BIANCO,
DEFENDANTS. :

REPORTER'S TRANSCRIPT OF PROCEEDINGS
JURY TRIAL - DAY 4
LOS ANGELES, CALIFORNIA
TUESDAY, JULY 11, 2006

MARK SCHWEITZER, CSR, RPR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
181-H ROYBAL FEDERAL BUILDING
255 EAST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012
(213) 626-7570



**Appearances of Counsel:**

For the Plaintiff:

Office of the U.S. Attorney
By Jason Gonzalez, AUSA
Kendra McNally, AUSA
312 North Spring Street
11th Floor
Los Angeles, CA 90012
(213) 894-2253

For Defendant Rakow:

Office of the Federal Public Defender
By Charles Brown, DFPD
Peter Johnson, DFPD
321 East Second Street
Los Angeles, CA 90012
(213) 894-4795

For Defendant Del Bianco:

Law Offices of Errol H. Stambler
By Errol H. Stambler, Esq.
10880 Wilshire Boulevard
Suite 1050
Los Angeles, CA 90024
(310) 473-4525



**I N D E X**


**(HEARING HELD OUTSIDE THE PRESENCE OF THE JURY.)** ........ 641

**CAROLYN BRODERICK, PREVIOUSLY SWORN** ...................... 659
**CROSS-EXAMINATION (CONTINUED)** BY MR. BROWN: ............. 659
**CROSS-EXAMINATION** BY MR. STAMBLER: ..................... 674
**REDIRECT EXAMINATION** BY MR. GONZALEZ: .................. 678
**RECROSS-EXAMINATION** BY MR. BROWN: ...................... 686
**RECROSS-EXAMINATION** BY MR. STAMBLER: ................... 702
**FURTHER REDIRECT EXAMINATION** BY MR. GONZALEZ: .......... 706
**FURTHER RECROSS-EXAMINATION** BY MR. STAMBLER: ........... 710

**CATHERINE HATHAWAY, SWORN** ............................. 712
**DIRECT EXAMINATION** BY MR. GONZALEZ: .................... 712
**CROSS-EXAMINATION** BY MR. BROWN: ........................ 749

**(HEARING HELD OUTSIDE THE PRESENCE OF THE JURY.)** ........ 772

**FRED ASHTIANI, SWORN** ................................... 785
**DIRECT EXAMINATION** BY MR. GONZALEZ: .................... 785
**CROSS-EXAMINATION** BY MR. JOHNSON: ...................... 806

**CHRISTIAN HUNTER, SWORN** ................................ 834
**DIRECT EXAMINATION** BY MR. GONZALEZ: .................... 834
**CROSS-EXAMINATION** BY MR. JOHNSON: ...................... 841
**CROSS-EXAMINATION** BY MR. STAMBLER: ..................... 849

**TERRY SHINABARKER, SWORN** ............................... 851
**DIRECT EXAMINATION** BY MS. McNALLY: ..................... 851
**CROSS-EXAMINATION** BY MR. JOHNSON: ...................... 854
**CROSS-EXAMINATION** BY MR. STAMBLER: ..................... 855

**MICHAEL AZEEZ, SWORN** ................................... 859
**DIRECT EXAMINATION** BY MS. McNALLY: ..................... 859
**CROSS-EXAMINATION** BY MR. JOHNSON: ...................... 862

**KENNETH BARISH, SWORN** .................................. 864
**DIRECT EXAMINATION** BY MR. ............................. 864
**CROSS-EXAMINATION** BY MR. GONZALEZ: ..................... 868
**REDIRECT EXAMINATION** BY MR. BROWN: ..................... 869

**MARK ZAPLIN, SWORN** ..................................... 870
**DIRECT EXAMINATION** BY MR. GONZALEZ: .................... 870




**E X H I B I T S**


(Exhibits 285, 286, and 287 received.) .................. 648
(Exhibits 1070 and 1071 received.) ...................... 673
(Exhibit 198 received.) ................................. 715
(Exhibit 191 received.) ................................. 717
(Exhibit 172 received.) ................................. 720
(Exhibit 175 received.) ................................. 726
(Exhibit 174 received.) ................................. 729
(Exhibit 179 received.) ................................. 732
(Exhibit 178 received.) ................................. 734
(Exhibit 184 received.) ................................. 735
(Exhibit 185 received.) ................................. 736
(Exhibit 187 received.) ................................. 738
(Exhibit 189 received.) ................................. 739
(Exhibit 182 received.) ................................. 742
(Exhibit 181 received.) ................................. 743
(Exhibit 194 received.) ................................. 746
(Exhibit 1088 received.) ................................ 756
(Exhibit 1074 received.) ................................ 779
(Exhibit 199 received.) ................................. 782
(Exhibit 1076 received.) ................................ 783
(Exhibit 131 received.) ................................. 789

paychecks that we had, the consulting checks.
Q. What's your understanding of her relationship with Mr. Rakow?
A. My understanding was that they were husband and wife.
Q. Does Mr. Rakow still work for CDM?
A. You mean today?
Q. Yes.
A. No, sir. CDM is -- which is Bargain Network, was acquired more than a year ago.
Q. When did Mr. Rakow stop working for CDM, if you know?
A. Well, the terminology working, of course, I look at it as someone on the payroll, but he was a consultant, and probably 2001, 2002 maybe. Maybe 2002 the consulting ended.
Q. Did Ms. Del Bianco do any work for Century Direct Marketing?
MR. JOHNSON: Objection, your Honor, as to foundation.
THE COURT: Sustained.
Q. BY MR. GONZALEZ: When you saw Ms. Del Bianco at Century Direct Marketing, did you see her doing any work?
MR. JOHNSON: Objection, your Honor. Again, foundation.
THE COURT: Overruled.
THE WITNESS: I never met her at Century Direct Marketing. It was in our company called INQ, interrelated



companies, and personally, no, I never saw her working, no.
Q. BY MR. GONZALEZ: Please look at Exhibit 131.
A. I'm looking at it.
Q. Please take as much time as you need to look at it, and let me know when you're done.
A. Okay, I'm done.
Q. What is that document, sir?
A. This is a consulting agreement between our former company, Century Direct Marketing, and Mr. Rakow. For him to serve as a consultant with the company.
Q. Does it appear to be a true and correct copy of that agreement?
A. Yes, sir. I recognize Mr. Hunter's signature.
MR. GONZALEZ: Your Honor, move to admit Exhibit 131.
THE COURT: The document is admitted.
**(Exhibit 131 received.)**
Q. BY MR. GONZALEZ: Showing you 131 on the screen here. What's the date of that agreement?
A. December 23rd, 1999.
Q. And it's between whom?
A. Century Direct Marketing, Inc., and Mr. Ron Rakow.



services covered by this agreement on the terms and conditions, and during the term set forth in this agreement."
Q. And in paragraph 2.1, what's the amount that is going to be paid to Mr. Rakow?
A. $2,500 per full calendar month.
Q. Please look at Exhibits 146 and 147.
A. Okay.
Q. First of all, starting with 146, what's that document?
A. That's a letter of engagement between Ms. Denise Del Bianco, consulting between her and Century Direct Marketing, and addressed to Mr. Hunter, the president, CEO of the company.
Q. Does it appear to be a true and correct copy from CDM's files?
A. Yes, sir.
MR. GONZALEZ: Your Honor, move to admit 146.
THE COURT: The document will be admitted.
**(Exhibit 146 received.)**
Q. BY MR. GONZALEZ: And quickly, Mr. Ashtiani, Exhibit 147, what is that?
A. And this is basically the similar document written on Ms. Del Bianco's letterhead, and sets the fee for $10,000 per month for consulting, organization structure, and strategic planning, et cetera.
Q. Is this a true and correct copy of a document from CDM's



files?
A. To the best of my knowledge, yes.
MR. GONZALEZ: Your Honor, move to admit 147.
THE COURT: Admitted.
**(Exhibit 147 received.)**
Q. BY MR. GONZALEZ: First showing you 146, what's the date of that agreement?
A. Monday, July 24, 2000.
Q. And what's the first sentence of that agreement say?
A. "Pursuant to our recent discussions, we will undertake to represent and advise your firm as to policies, concepts, contracts, and trends that will keep you and your sales executives apprised of impending events in the area in which the federal government, its disposals and procurements can help you increase your business."
Q. And it's signed at the bottom?
A. Signed by Denise Del Bianco and Christian Hunter.
Q. And then showing you 147, what's the date of that agreement?
A. The date is September 1, 2001.
Q. And what does it indicate the payments -- actually, I'm sorry. Please read the first sentence if you would.
A. "We are pleased to accept your offered continuation of

Exhibit 132. The Court also understands that counsel have reached an agreement to admit Del Bianco Exhibits 4, 5, and 12. Is that correct, Counsel?

MR. GONZALEZ: Yes, your Honor.

MR. JOHNSON: Yes, your Honor.

MR. STAMBLER: Yes, your Honor.

THE COURT: Those documents are admitted.

**(Exhibits 143, 149-153, 132, 4, 5, 12 received.)**

THE COURT: Mr. Johnson.

Q. BY MR. JOHNSON: This agreement between CDM and Ms. Del Bianco was in the July 24th, 2000; correct?

A. Yes, sir.

Q. It's fair to say by that time Ms. Del Bianco had invested a significant amount of money in DCM; correct?

A. That is correct.

Q. And then that was renewed -- the contract was renewed the following year, September 1, 2001; correct?

A. Yes, sir. To the best of my knowledge, yes, sir.

Q. What I'm going to show you is Government Exhibit 154. Do you recognize that?

A. Yes, sir.

Q. I'm just going to refer to the ones that say for picture, for picture. That's the pictures that came from Mr. Rakow; correct?

A. Yes, sir.



Q. Mr. Rakow had taken from photographs for CDM?

A. That is correct.

Q. And you all purchased the photographs?

A. Yes, sir.

Q. What were they photographs of? Were they on the walls?

A. Yes. We -- for public relations purposes and decorating the office, we needed some exhibition type of things, and Mr. Rakow being an artist, we bought some very large pictures framed from him.

Q. And those were framed pictures that were throughout your office; correct?

A. Throughout the office, yes, sir. And conference room.

Q. Now, you said during direct examination that you never saw Ms. Del Bianco; correct?

A. Perhaps once at our INQ office.

Q. But it's also fair to say this her name was on a lot of documents; correct?

A. Yes, sir.

Q. That she had invested by that time a significant amount of money in CDM?

A. That's correct.

Q. That she was an investor in CDM?



THE COURT: Thank you. Mr. Stambler?

MR. STAMBLER: No questions, your Honor.

THE COURT: Mr. Gonzalez?

MR. GONZALEZ: Nothing, your Honor.

THE COURT: Sir, thank you for coming in. You may be excused.

THE WITNESS: Yes, your Honor. Thank you.

MR. GONZALEZ: Your Honor, the government next calls Christian Hunter.

THE COURT: Mr. Hunter, please come right up here next to the court reporter to be sworn.

THE CLERK: Please raise your right hand.

**CHRISTIAN HUNTER, SWORN.**

THE CLERK: Please be seated.

Please state your full name, and spell your first and last name for the record.

THE WITNESS: Christian Hunter. C-H-R-I-S-T-I-A-N, H-U-N-T-E-R.

**DIRECT EXAMINATION**

BY MR. GONZALEZ:

Q. Good afternoon, Mr. Hunter. Do you currently work, sir?

A. No.

Q. Where do you live?

A. Santa Barbara.

Q. Did you ever work for a company called CDM?



A. I did.

Q. What did you do for CDM?

A. I founded it and served as its CEO.

Q. When was that?

A. Between the years of, I think, '95 and 2004.

Q. What was CDM's business?

A. It was principally engaged in the sales of catalogs and publications.

Q. Did it ever go by another name, CDM?

A. It did. Eventually its name changed to Bargain Network.

Q. Have you ever met the defendant Ron Rakow?

A. I have.

Q. When approximately did you first meet him?

A. I think in 1993.

Q. What were the circumstances of that first meeting?

A. I was introduced to him by a new friend and business partner Michael Debrough (phonetic) as someone who was in investments.

Q. Did you discuss doing business together, you and Mr. Rakow?

A. We did.

Q. And did that business take place back then?

A. No, it didn't.

[illegible] at some later point?

A. Yes.
Q. Do you recall, sir, whether there were any negotiations leading to this document?
A. I recall there were negotiations, yes, leading up to this.
Q. Who were the negotiations between?
A. Ron Rakow and myself.
Q. To your recollection, was Denise Del Bianco involved at all?
A. I don't know how involved she would be. She was around for it, I remember, when we signed it. But to my knowledge she was not involved with me in the negotiation of it.
Q. Looking at Exhibit 133, sir. What's that?
A. The share purchase agreement.
Q. Between whom?
A. Between Century Direct Marketing and Denise Del Bianco.
Q. Is that your signature on the back?
A. Yes.
Q. Did -- were there negotiations that led to this agreement?
A. That would be with Ron Rakow.
Q. When approximately did your relationship with Mr. Rakow come to an end?
A. I think around 2002, but I could be mistaken.
Q. Between the time of the documents that we're looking at,



1999, and that time, did CDM receive additional money from Rakow and/or Del Bianco, if you recall?
A. I don't recall.
Q. Were there negotiations related to the termination of your relationship with Mr. Rakow?
A. There were, but I didn't -- I didn't engage in them.
Q. You were involved in those?
A. I oversaw them. I activated our COO to negotiate with Ron.
Q. With whom?
A. With Ron.
Q. And when approximately did that agreement come to an end?
A. Again, I think it was 2002, but it could be 2003.
MR. GONZALEZ: Thank you, your Honor. Nothing further.
THE COURT: Mr. Johnson.

**CROSS-EXAMINATION**

BY MR. JOHNSON:
Q. Good afternoon, Mr. Hunter.
A. Afternoon.
Q. You said you met Ron in, I guess, the early 1990's?
A. Yeah, right around '93.



Q. What were you doing at that time?
A. I was just out of high school trying to scare up some money to start a business.
Q. Eventually you did start a business?
A. That's right.
Q. And that's CDM?
A. Yes.
Q. And around the late 1990's, CDM was in financial trouble?
A. Dire.
Q. Dire financial trouble. Low funds and not enough to pay the bills.
A. That's pretty much dire, yes.
Q. And so you went to Ron; correct?
A. I did.
Q. And you went to their house?
A. I did.
Q. In Santa Barbara?
A. Many times.
Q. And Denise was there at that time?
A. She was.
Q. I'm actually talking about the time in 1998, or 1999, excuse me.
A. Um-hm.
Q. You said Denise was there at the house; correct?



A. She was, usually.
Q. I'm talking about the time when you went in 1999.
A. I went multiple times. So which time in particular?
Q. So there were multiple times when you went to the house to talk to them about money?
A. Yes.
Q. You -- at that time you said -- there were times when you met with Denise and Ron; correct?
A. There were times that, yes, I met with -- they were both there, yes.
Q. Eventually, right before Christmas in 1999, you were able to get some investment into CDM?
A. That's right.
Q. And that investment came from Denise Del Bianco Services; correct?
A. I think so, the check.
Q. Would anything help to refresh your memory?
A. I mean, I'm sure you guys know. I think so. It might have been Gulf United.
Q. And Gulf United was affiliated with Ms. Del Bianco?
A. I think so, yes.
Q. Okay. I'm showing you on the screen a check from Denise Del Bianco to Century Directing Marketing.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE MARGARET M. MORROW, JUDGE PRESIDING

---

UNITED STATES OF AMERICA, : PAGES 884 - 1103
PLAINTIFF, :
VS. : NO. CR 04-1563-MMM
RONALD LEON RAKOW, :
DENISE DEL BIANCO, :
DEFENDANTS. :

REPORTER'S TRANSCRIPT OF PROCEEDINGS
JURY TRIAL - DAY 5
LOS ANGELES, CALIFORNIA
WEDNESDAY, JULY 12, 2006

MARK SCHWEITZER, CSR, RPR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
181-H ROYBAL FEDERAL BUILDING
255 EAST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012
(213) 626-7570



I N D E X

(HEARING HELD OUTSIDE THE PRESENCE OF THE JURY.) ........ 888

MARK ZAPLIN, PREVIOUSLY SWORN.......................... 901
DIRECT EXAMINATION (CONTINUED) BY MR. GONZALEZ: ........ 901
CROSS-EXAMINATION BY MR. BROWN: ......................... 924
CROSS-EXAMINATION BY MR. STAMBLER: ...................... 931

KEVIN MICHAEL O'DONNELL, SWORN........................... 939
DIRECT EXAMINATION BY MS. McNALLY: ...................... 939
CROSS-EXAMINATION BY MR. STAMBLER: ...................... 941
CROSS-EXAMINATION BY MR. BROWN: ......................... 943

JULIE CORDA, SWORN....................................... 944
DIRECT EXAMINATION BY MR. GONZALEZ: ..................... 944
CROSS-EXAMINATION BY MR. JOHNSON:........................ 962

PHYLLIS RENEE ROGERS, SWORN.............................. 967
DIRECT EXAMINATION BY MR. GONZALEZ: ..................... 967
CROSS-EXAMINATION BY MR. BROWN: ......................... 981
CROSS-EXAMINATION BY MR. STAMBLER: ...................... 988

DEFENDANT RAKOW AND DEFENDANT DEL BIANCO
DEPOSITION EXCERPTS PLAYED............................... 997

CAROLYN BRODERICK, PREVIOUSLY SWORN...................... 1004
DIRECT EXAMINATION BY MR. GONZALEZ: ..................... 1004
CROSS-EXAMINATION BY MR. BROWN: ......................... 1021
CROSS-EXAMINATION BY MR. STAMBLER: ...................... 1043

LYN BLAIR, SWORN......................................... 1047
DIRECT EXAMINATION BY MR. STAMBLER....................... 1047
CROSS-EXAMINATION BY MR. BROWN: ......................... 1051

CARL R. KNUDSON, SWORN................................... 1054
DIRECT EXAMINATION BY MR. JOHNSON........................ 1054



**Appearances of Counsel:**

For the Plaintiff:

Office of the U.S. Attorney
By Jason Gonzalez, AUSA
Kendra McNally, AUSA
312 North Spring Street
11th Floor
Los Angeles, CA 90012
(213) 894-2253

For Defendant Rakow:

Office of the Federal Public Defender
By Charles Brown, DFPD
Peter Johnson, DFPD
321 East Second Street
Los Angeles, CA 90012
(213) 894-4795

For Defendant Del Bianco:

Law Offices of Errol H. Stambler
By Errol H. Stambler, Esq.
10880 Wilshire Boulevard
Suite 1050
Los Angeles, CA 90024
(310) 473-4525



E X H I B I T S

(Exhibit 193 received.)................................ 907
(Exhibit 192 received.)................................ 909
(Exhibit 188 received.)................................ 910
(Exhibit 195 received.)................................ 913
(Exhibit 183 received.)................................ 919
(Exhibits 176, 177 received.).......................... 922
(Exhibits 180, 190 received.).......................... 923
(Exhibit 319 received.)................................ 947
(Exhibit 320 received.)................................ 956
(Exhibit 253, 257 received.)........................... 958
(Exhibit 214 received.)................................ 972
(Exhibit 219 received.)................................ 977
(Exhibit 215 received.)................................ 980
(Exhibit 220 received.)................................ 100
(Exhibits 56, 57 received.)............................ 100
(Various exhibits received supra.)..................... 100
(Exhibits 277, 278 received.).......................... 100
(Exhibit 288 for identification.)...................... 100

MR. BROWN: Your Honor, I'm going to object on foundational grounds, at basis for these documents.

THE COURT: I'm going to overrule the objection and admit the exhibits.

**(Exhibit 214 received.)**

Q. BY MR. GONZALEZ: Looking at the first document of Exhibit 214. What is this?

A. It's the check I mentioned earlier to Denise Del Bianco for $200,000.

Q. And the date?

A. December 8, 1999.

Q. It's indicated up at the top there?

A. Yes.

Q. And the second page?

A. Is a wire transfer.

Q. To whom and for how much?

A. It is for $400,000 going to Denise Del Bianco.

Q. And is the date up at the top?

A. April 7th of 2000.

Q. The next record?

A. It is a wire transfer in the amount of $500,000, going to Denise Del Bianco on April 27, 2000.

Q. The next one.

A. A $200,000 wire transfer going to Denise Del Bianco on July 17 of 2000.



Q. The next one. Start with the date.

A. July 21st, 2000.

Q. And is there a wire there relating to Denise Del Bianco?

A. Yes.

Q. For how much?

A. $125,000.

Q. The next page. What is the date of that, of the wire reflected on that?

A. July 27th of 2000.

Q. And a wire to Ms. Del Bianco on this page?

A. Yes. $300,000.

Q. A few more. Page 7, what's the date?

A. September 6, 2000.

Q. Wire to Ms. Del Bianco reflected on this page?

A. There is.

Q. For how much?

A. $250,000.

Q. The next page, page 8. What's the date?

A. October 20th.

Q. And is there a -- that's 2000; right?

A. Yes, I'm sorry.

MR. BROWN: Your Honor, again, I'm going to interpose an ongoing objection based on lack of personal



Mr. Brown.

MR. BROWN: I apologize. Lack of personal knowledge, foundation, your Honor, with respect to this line of questioning.

THE COURT: I suggest you lay more foundation to deal with the objection, Mr. Gonzalez.

MR. GONZALEZ: Yes, your Honor.

Q. Ms. Rogers, when you were working with Reed Slatkin, did you review the records that related to his business?

A. I did.

Q. Was that part of your job?

A. It was.

Q. Did the records that you reviewed include records for banks?

A. I'm sorry?

Q. Did the records that you reviewed include records from banks?

A. Yes.

Q. Did you use the records from banks in making Reed Slatkin's records such as the general ledger and things like that?

A. I used them to verify that the transactions that I was asked to make were done.

MR. GONZALEZ: Your Honor, resubmit the exhibit.

THE COURT: Were you asked to take care of these



transactions that are reflected on these records?

THE WITNESS: Yes, this was part of my job.

MR. GONZALEZ: Thank you, your Honor.

THE COURT: The objection is overruled.

Q. BY MR. GONZALEZ: Back on page 8, I believe you said it was October 20, 2000; is that right?

A. Yes.

Q. And the wire transfer -- was there a wire transfer on that date to Ms. Del Bianco?

A. There was.

Q. What was the amount?

A. $250,000.

Q. Lastly, page 9 of the exhibit, what's the date of the wire reflected on this page?

A. January 17 of 2001.

Q. Is there one from -- I'm sorry. To Ms. Del Bianco reflected on here?

A. Yes, there is.

Q. What's the amount?

A. $250,000.

Q. Please look at Exhibit 219.

A. Okay.

Q. What are the documents in Exhibit 219?

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE MARGARET M. MORROW, JUDGE PRESIDING

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | PAGES 1104 - 1283 |
| PLAINTIFF, | : | |
| VS. | : | NO. CR 04-1563-MMM |
| RONALD LEON RAKOW, DENISE DEL BIANCO, | : | |
| DEFENDANTS. | : | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS
JURY TRIAL - DAY 6
LOS ANGELES, CALIFORNIA
THURSDAY, JULY 13, 2006

CERTIFIED COPY

MARK SCHWEITZER, CSR, RPR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
181-H ROYBAL FEDERAL BUILDING
255 EAST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012
(213) 626-7570



**Appearances of Counsel:**

For the Plaintiff:

Office of the U.S. Attorney
By Jason Gonzalez, AUSA
Kendra McNally, AUSA
312 North Spring Street
11th Floor
Los Angeles, CA 90012
(213) 894-2253

For Defendant Rakow:

Office of the Federal Public Defender
By Charles Brown, DFPD
Peter Johnson, DFPD
321 East Second Street
Los Angeles, CA 90012
(213) 894-4795

For Defendant Del Bianco:

Law Offices of Errol H. Stambler
By Errol H. Stambler, Esq.
10880 Wilshire Boulevard
Suite 1050
Los Angeles, CA 90024
(310) 473-4525



I N D E X


(HEARING HELD OUTSIDE THE PRESENCE OF THE JURY.)........ 1107

CARL R. KNUDSON, PREVIOUSLY SWORN........................ 1129
DIRECT EXAMINATION (CONTINUED) BY MR. ................... 1129
CROSS-EXAMINATION BY MR. GONZALEZ: ...................... 1150
CROSS-EXAMINATION BY MR. STAMBLER: ...................... 1157
REDIRECT EXAMINATION BY MR. JOHNSON: .................... 1159

COURT'S INSTRUCTIONS TO THE JURY......................... 1166

CLOSING ARGUMENT BY COUNSEL FOR THE GOVERNMENT........... 1186

CLOSING ARGUMENT BY COUNSEL FOR DEFENDANT RAKOW.......... 1200

CLOSING ARGUMENT BY COUNSEL FOR DEFENDANT DEL BIANCO..... 1232

REBUTTAL ARGUMENT BY COUNSEL FOR THE GOVERNMENT.......... 1246




Los Angeles, California; Thursday, July 13, 2006

**8:25 A.M.**

**(HEARING HELD OUTSIDE THE PRESENCE OF THE JURY.)**

THE COURT: Good morning, Counsel. The Court has been handed a document that I gather, Mr. Gonzalez, is something you provided to the defense last night.

MR. GONZALEZ: The brief, your Honor, or the chart?

THE COURT: No, this chart document.

MR. GONZALEZ: Yes, your Honor. I did. It is a copy of what has already been provided to defense in discovery. It's attachments to the special agent's report. The agent has not made any changes to the report. There are handwritten notations that appear on the report, as one can see from flipping through it, but they are essentially highlighting things, putting asterisks by things, inserting dates and things like that, apparently for the agent's ease of reference.

To my viewing, my understanding, there's no substantive change. It's just for the agent's clarity so she can keep track of things more easily in her own mind. So we'd submit there's nothing substantive in this whatsoever. We provided it to the defense as a courtesy, and there shouldn't be any further cross-examination.

Now, another thing I should say is that in the Court's instructions that you were read -- and you'll see them again. They are going to be back in the jury room with you. The Court instructs you not to base your decision on emotions. You're not doing anyone, I would submit -- not the government, not the defense, not the defendants, not the Court -- you're not doing anybody any service by deciding this case based upon your emotions, like who you like, who you don't like, what you think about the IRS, what you think about the defendant, whether you like the way they look, whether you like the way we look, whether you're upset about some perceived misconduct or something like that. There's certainly been allegations of that.

This case is about the evidence and the facts. And your job, the way the system was intended, as the counsel referred to repeatedly, the structure of the system is not to have people whipped into a frenzy and go back into a room and make an impulsive decision. Your duty is to decide the case based on the facts. And the facts in this case show that the defendants are guilty of tax evasion.

Now, talking about one last point the defense brought up and emphasized quite a bit is the meticulous records that Ms. Del Bianco kept and how could that be that they were trying to evade the IRS if they kept such meticulous records.



Members of the jury, keep in mind that none of those were given to the IRS. None of them. Defense counsel said but why didn't they call Mr. Hellman and get those records if they were worried about this way back when.

They did call Mr. Hellman. Ms. Ah Yat was up on the stand and said when she first got the case, she called Mr. Hellman and said would you please provide me with a 433 form, and this is back in, I believe she said, February 1997. She asked for this form, and substantiating documents. You've seen from what the defense and the government has presented. The defense had those records. They were meticulous. They were well documented. Why didn't they provide it? She didn't, at least they didn't fill out this form until 1999, over two years later. All they had to do was call Mr. Hellman? They did do that. The IRS called Mr. Hellman and didn't get the information. It was not disclosed.

With respect to the loan information, there were several documents in the evidence that show, and this is for 1999, showing you Exhibit 272. And those loan documents are in the evidence obviously, and they are in -- I'm trying to find you the exhibit numbers. Around the 270 to 275 range. And what they show is huge amounts of money going back to Mr. Rakow during the time period that is charged in the



reported income, reported income for these years, '98 through 2001, is quite low, often negative. And look at the returns yourselves.

The returns for Launch Media, and this is -- you'll recall that there are loans to Ronald Rakow from DDBBS right here and from Launch Media. Pretty much every year there's a loan from DDBBS and a loan from Launch Media to Ronald Rakow. Next year, loan from DDBBS, loan from Launch Media to Ronald Rakow. For the years that these huge loans are being made to Ronald Rakow, the gross receipts are only around $15,000. Look at them yourself. There's one year where the gross receipts are quite a bit higher, 33,000. But for the other years, very, very low.

So what is going on here? These loan documents show that Ron Rakow earned the money. Ronald Rakow owned the stock. He held it in Ms. Del Bianco's name, put it on her tax returns, and then lo and behold, it goes right back to Mr. Rakow in the form of these documented loans. Yes, they are documented, fine, but they are not disclosed to the IRS.

Not in this 433 form, which he had the opportunity to disclose, in which he had the opportunity to disclose these loans from the IRS but did not, but did not. And by the time this 4334 form was filled out by Mr. Rakow two years after he was asked to fill it out, he had accumulated over $300,000 worth of loans from DDBBS and Launch Media.



He did not report those on this 433 form. Why? Because this is hiding this very good evidence of tax evasion. And IRS agents reviewing this form, seeing a $300,000 loan or loans totaling $300,000 is going to say what's this? What's this about? He doesn't want to answer these questions. He lists only a loan from his father for $70,000. It's not that the provision in the 433 form is ignored, that that question wasn't answered or asked, what loans do you have. It was asked, and he said I have a $70,000 loan from my father.

Didn't say anything about the Launch Media loans. Didn't say anything about the DDBBS leans. Why? Because he's evading his taxes.

And the reason, as you've been instructed and as I think you've heard in the testimony, calling something a loan -- loan proceeds are not income. If you receive a loan of a hundred thousand dollars or in this case $318,000, you don't have to report that as income. That's in the jury instructions. What you have to report is interest income.

You have to pay -- to receive interest, you have to report that. If you earn interest, you have to report that. But look on their tax returns. Look on their tax returns. You'll not see any interest expense noted by Mr. Rakow. And you won't see any interest income for Ms. Del Bianco. These

# Ronald Rakow and Denise Del Bianco
## (1998 - 2001)

## Defendants' Tax Underpayment
(1998 - 2001)

| Year | As Corrected What the Tax Should've Reported | As Filed Ronald Rakow Total Tax Paid per Return | Ronald Rakow Tax Underpayment | As Corrected Denise Del Bianco Tax (Overpayment) | Ronald Rakow Total Tax Benefit |
|---|---|---|---|---|---|
| 1998 | $ 68,582 | $ - | $ 68,582 | $ (22,376) | $ 46,206 |
| 1999 | $ 530,388 | $ 9,016 | $ 521,372 | $ (446,415) | $ 74,957 |
| 2000 | $ 572,910 | $ - | $ 572,910 | $ (244,853) | $ 328,057 |
| 2001 | $ 120,832 | $ - | $ 120,832 | $ (130,098) | $ (9,266) |
| | $ 1,292,712 | $ 9,016 | $ 1,283,696 | $ (843,742) | $ 439,954 |

Note: Even if we give complete refund (overpayment) for Denise Del Bianco 1040 tax returns for 1998 to 2001, Ronald Rakow still received total tax benefit of $439,954.

EXHIBIT C

6/25/2006